664 So.2d 106 (1995)
STATE of Louisiana, In the Interest of GA, CA, JA, CA2 and RA.
No. 94 CA 2227.
Court of Appeal of Louisiana, First Circuit.
July 27, 1995.
*108 Jacquelyn E. Watts, Baton Rouge, for plaintiff-appellee Louisiana Department of Social Services.
Albert A. Bensabat, III, Law Office of Eugene Gerdes, III, Hammond, for defendant-appellant E.A.
Before GONZALES and PARRO, JJ., and REDMANN,[1] J. Pro Tem.
PARRO, Judge.
In this suit for termination of parental rights by the Louisiana Department of Social Services ("State"), the mother of five children appeals a lower court's decision terminating her parental rights and freeing the children for adoption.[2] For the reasons set forth below, we affirm in part, and reverse in part, the trial court's judgment.

Facts and Procedural History
The facts of this case as set forth by the trial court are as follows:
This parent, [EA], and her four children, [GA, CA, JA, and CA2,[3]] came to the attention of the State of Louisiana, Office of Community Services, in January of 1992 after [CA2] was born with syphilis and the mother failed to secure needed follow-up medical treatment for him as a result of her cocaine addiction, which addiction the mother admitted. The State became involved with the mother and her four children *109 furnishing various services to her as well as the children from January [of] 1992 to July of 1992. One of the services provided by the State was to obtain drug treatment for the mother in [an] in-house facility. The mother left the treatment center. In addition to providing drug treatment for the parent, the State also provided drug screening, transportation, and scheduling. The children were placed in a day care center. In any event, in July of 1992 since the children were being cared for by their grandmother, [QA], who had obtained custody in a civil proceeding[,] the State's case concerning the children, [GA, CA, JA, and CA2], was closed. However, when the grandmother, [QA], was incarcerated in a federal penal facility in September of 1992, she failed to advise the agency that she would not be the caretaker for the four children. As a result of this turn of event[s], the children, [GA, CA, JA, and CA2], were taken into the custody of the State on September 28, 1992, because of the mother's inability to care for the children due to her substance abuse and the previous medical neglect as well as dependency regarding these children. No other appropriate relative placements were available also. On December [9], 1992, [GA, CA, JA, and CA2] were adjudicated children in need of care and the parent[,] a parent in need of supervision. The Court continued the children in the legal custody of the State of Louisiana where they have remained continuously until the present time. On May 19, 1993, the mother, [EA], gave birth to her fifth child, [RA]. [EA tested] positive for cocaine when she entered the hospital[,] and she had also failed to follow through with the requirements to receive AFDC which would have provided some income and a medical card to that child. She also had made no provisions to provide for the basic needs of the newborn, such as ... diapers, bottles, formulas, crib or baby bed, or clothing. The mother had also failed to comply with the State's plan to reunite her with her other children including not complying with the drug screening tests and providing no home as well as the other provisions mentioned above for the newborn child. [RA] was therefore taken into custody on May 20, 1993.
Since the four older children were taken into State custody in September of 1992, timely review hearings were held on March 3, 1993, September 8, 1993, March 2, 1994, and May 4, 1994. The plan for the four older children changed from reunification to termination of parental rights at the September 8, 1993 hearing because allegedly no progress had been made toward the goal of reunification and no attempt had been made to alleviate the substance abuse problem which brought the children into State care. For these same reasons, the reunification plan regarding RA, the youngest child, changed to termination of parental rights at the March 2, 1994 hearing.
On February 2, 1994, the State had filed a petition to terminate the parental rights of the mother regarding the four older children. On March 14, 1994, the State filed an amended petition for termination of parental rights to include the fifth child, RA, in the previously filed petition. The entire matter came up for hearing on August 25, 1994.[4] At the termination hearing, the mother appeared and voiced objection to the proceeding. Admitting a long history of drug abuse and the resulting effect on her children, she testified she had an off-and-on drug problem up until her recent incarceration. According to EA, she began using drugs to a greater extent when her children were taken into State custody in September of 1992. At the time of the hearing, EA was incarcerated for felony convictions, and as a result of such incarceration, she was unable to use drugs. Her plan was that upon her release she would reside with her mother, who would have custody of the five children. Although EA had admittedly in the past returned to using drugs because of everyday pressures of life, she felt that she would not return to using *110 drugs once released because she now had God in her life. She testified that she would now give all of her problems to God.
After considering the evidence and the testimony of the witnesses and considering their veracity and demeanor, the trial court found that the State carried its burden of proving by clear and convincing evidence that the mother's parental rights should be terminated under LSA-Ch. C. art. 1015(4), (5), and (7). Therefore, judgment was entered: (1) terminating the parental rights of EA to her five minor children, GA, CA, JA, CA2, and RA; (2) terminating the parental rights of the fathers of GA, CA, JA, and RA; (3) recognizing that the parental rights of CA2's father terminated upon his father's death; and (4) freeing the five minor children for adoption. From this judgment, the mother appeals.

Standard of Review
A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding which is manifestly erroneous or clearly wrong. See Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882, n. 2 (La.1993). Before an appellate court may reverse a factfinder's determinations, it must find from the record that a reasonable factual basis does not exist for the findings and that the record establishes that the findings are clearly wrong (manifestly erroneous). Id. at 882; see Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Through Department of Transportation and Development, 617 So.2d at 883. In other words, when findings are based on a credibility determination, a factfinder's decision to credit the testimony of one of two or more witnesses can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 845 (La.1989).
Whether the mother is unfit to raise her children, whether she has shown no significant substantial indication of reformation, and whether she is unlikely to reform are questions of fact. State, In the Interest of CH, 599 So.2d 850, 853-854 (La.App. 1st Cir.1992). These determinations by the trial court will not be set aside in the absence of manifest error. Id.

Parental Rights
Parental rights to the care, custody, and management of children is a fundamental liberty interest warranting great deference and vigilant protection under the law. State in the Interest of JL, 93-352, p. 6 (La.App. 3rd Cir. 5/18/94), 636 So.2d 1186, 1191; State in the Interest of Three Minor Children, 558 So.2d 1238, 1243 (La.App. 1st Cir.1990). The termination of parental rights is a severe and irreversible action. State in the Interest of L.L.Z. v. M.Y.S., 620 So.2d 1309, 1313 (La.1993). Thus, the legislature has imposed strict procedural and evidentiary requirements which must be met before issuance of a judgment terminating parental rights. State in Interest of JL, 93-352 at 6, 636 So.2d at 1191.
The evidentiary standard established in termination cases mandates, in part for public policy reasons, that the State present proof by at least clear and convincing evidence of the parents' failure to comply with all of the enumerated conditions specified in any given subsection of LSA-Ch. C. art. 1015 (which permits termination of parental rights under certain circumstances).[5] LSA-Ch. C. art. 1035. This heightened burden of proof requires that the existence of the disputed fact be highly probable, that is, much more probable than its non-existence. Louisiana State Bar Association v. Edwins, 329 So.2d 437, 442 (La.1976).

Termination of Parental Rights
LSA-Ch. C. art. 1015 provides, in part:

*111 The grounds set forth in the petition must meet all of the conditions of any one of the following Paragraphs:
* * * * * *
(3) Other parental mistreatment
(a) The conduct of the parent, either as a principal or accessory, constitutes abuse, neglect, or cruel and inhuman treatment or grossly negligent behavior which is below a reasonable standard of human decency.
(b) The parent is now unfit to retain parental control, and there is no reasonable expectation of his reformation in the foreseeable future.
(4) Prior adjudications as a child in need of care
(a) One year has elapsed since a child in need of care adjudication.
(b) The parent is unfit to retain parental control.
(c) The parent has shown no significant, substantial indication of reformation, and there is no reasonable expectation of his reformation in the foreseeable future.
(5) Prior adjudication as a child in need of care and removal from the parental home
(a) One year has elapsed since a child was removed from the parent's custody pursuant to a court order in a child in need of care proceeding and placed either in the custody of an agency or individual.
(b) The parent is now unfit to retain parental control, and there is no reasonable expectation of his reformation in the foreseeable future.
(c) The department has made every reasonable effort to reunite the child with his parents to no avail but now recommends that reunification would not be in the best interests of the child.
* * *
(7) Loss of custody due to the parent's condition
(a) One year has elapsed since a court order placing the child in the custody of the department.
(b) The child was removed from the custody of his parents because of the parent's mental illness, mental retardation, or substance abuse.
(c) The parent's condition continues to render the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm.
(d) Despite notice by the department, the parent has refused or failed to provide a plan for the appropriate care of the child other than foster care.
(e) Every reasonable effort has been made under the circumstances to rehabilitate the parent, and such efforts have failed.
(f) There is no reasonable expectation that the parent's condition will change or that he will be rehabilitated in the foreseeable future.
(g) According to expert testimony or proof of an established pattern of behavior, termination of parental rights and adoption are in the child's best interest.

* * *
The petition for termination filed by the State requested termination of the mother's parental rights under LSA-Ch. C. art. 1015(3), (4), (5), and (7). The trial judge found the evidence supported proof of the conditions specified in LSA-Ch. C. art. 1015(4), (5), and (7), but not in subsection (3). The finding of all of the conditions of any one of the grounds set forth in a subsection of this article is sufficient to justify the termination of parental rights. LSA-Ch. C. art. 1015; State in the Interest of S.C. v. D.N.C., 26,104, p. 2 (La.App. 2nd Cir. 6/22/94), 639 So.2d 426, 428, writ denied, 94-1977 (La. 11/4/94), 644 So.2d 1061. From our review of the record, we conclude that the State established all of the conditions necessary for termination of the mother's parental rights as to the four older children (GA, CA, JA, and CA2) under LSA-Ch. C. art. 1015(5). For that reason, we limit our discussion as to those four children to subsection (5) and pretermit discussion of the other subsections relied upon by the State in its petition and the trial court in its judgment as to these children. See State in the Interest of WS, 626 So.2d 408, 413 (La.App. 1st Cir.1993); State, in the Interest of JH v. RFH, 572 *112 So.2d 629, 631 (La.App. 3rd Cir.1990), writ denied, 575 So.2d 374 (La.1991). As to RA, we conclude that the State failed to establish all of the conditions of any one of the grounds set forth in its petition for termination of the mother's parental rights under LSA-Ch. C. art. 1015, and the basis for this conclusion will be discussed hereafter.

Passage of One Year
GA, CA, JA and CA2 were placed in the custody of the State pursuant to a verbal instanter order on September 28, 1992. The children were placed in foster homes and have been maintained in the State's custody for the entirety of these proceedings. On December 9, 1992, these four children were adjudicated in need of care. The State's petition to terminate the mother's parental rights regarding these children was filed on February 2, 1994. However, RA was placed in the custody of the State pursuant to a verbal instanter order on May 20, 1993, the day following her birth. She was placed in a foster home and has also been maintained in the State's custody for the entirety of these proceedings. On August 11, 1993, RA was adjudicated in need of care. The State amended its original petition to terminate the mother's parental rights to include RA on March 14, 1994. The termination hearing as to all five children was held on August 25, 1994, and the judgment terminating parental rights was signed on September 2, 1994.
With respect to GA, CA, JA, and CA2, the above facts make it clear that more than one year had elapsed from the date of the removal of these four children from the mother's care and custody pursuant to a court order in a child in need of care proceeding which resulted in the children being placed in the custody of the State (September 28, 1992) and the date of the petition to terminate (February 2, 1994).[6] Therefore, the requirements of LSA-Ch. C. art. 1015(5)(a) were satisfied as to these four children.
With respect to RA, however, it is clear that less than one year had elapsed from the date of the removal of this child from the mother's custody pursuant to a court order in a child in need of care proceeding which resulted in the child being placed in the custody of the State (May 20, 1993) and the date of the amended petition (March 14, 1994). It is also clear that less than one year had elapsed from the date of the adjudication (August 11, 1993) and the date of the amended petition. Therefore, the requirements of LSA-Ch. C. art. 1015(4)(a), (5)(a), and (7)(a) were not satisfied as to this child, and the trial court's finding on these facts was clearly wrong.[7]

Fitness as a Parent
Regarding the determination of EA's fitness as a parent, the term "unfit" includes parents "[w]hose ... substance abuse, or chemical dependency makes the parent unable or unwilling to provide an adequate permanent home for the child[ren] at the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior." LSA-Ch. C. art. 1003(10)(c).
In this case, EA has admittedly continued to use cocaine. In fact, she tested positive for cocaine eight months after the four older children were taken into State custody. Her long history of substance abuse and established pattern of behavior are evidence that EA will return to using cocaine as a matter of choice when exposed to normal everyday life. The only extended periods of *113 time for which EA has been able to refrain from using drugs has been during periods of involuntary incarceration. Although she was drug-free at the time of the termination hearing due to her incarceration, her history of drug use, even during pregnancy, clearly evidences her established pattern of behavior and her tendency toward continual drug use which makes her unable or unwilling to provide an adequate permanent home for the children at the present time or in the reasonably near future. This court notes that EA's goal throughout this entire proceeding has never been to personally obtain custody of her children based on her own abilities and qualities; rather, she wished for her 62-year-old mother, who already had a household of 4 to 11 residents, to obtain custody of these very young children.[8]
Under the circumstances of this case, this court finds that there was a reasonable factual basis to support the trial court's determination that the State proved by clear and convincing evidence that EA was unfit to retain parental control under LSA-Ch. C. art. 1015(5)(b) and that such determination was not manifestly erroneous.

Reformation
Regarding reformation by EA, the trial court made the following findings:
During the time period from September 28, 1992, when the four older children came into custody and the State was providing additional services to both the parent and the children including counseling, supervision, substance abuse referrals, and transportation, the mother did not avail herself of these services and made no progress to rehabilitate herself. In fact..., the mother was cocaine addicted on the birth of her fifth child on May 19, 1993. The mother continued to show no improvement and in fact has been convicted of several felonies and is now incarcerated in the parish prison in Amite. The mother has provided no plan for her children with the exception that her mother, [QA], will care for said children. She has readily admitted that she has been on drugs but contends that she has changed now.
The jurisprudence indicates that there is no expectation of reformation and no likelihood of reformation when the parent exhibits prolonged and consistent abusive or negligent behavior or a long history of substance abuse. State in the Interest of L.L.Z. v. M.Y.S., 620 So.2d at 1317. Furthermore, conduct such as mental or behavioral disorders which cause a parent to refuse to cooperate with the authorities in addressing the needs of a child would also suggest that no reasonable expectation of reformation exists and that it is unlikely that the parent will reform. Id. However, a reasonable expectation of reformation is found to exist if the parent has cooperated with state officials and has shown improvement, although all of the problems that exist have not been eliminated. Id.
Although it appears that EA may have made improvement and may have shown steps toward reformation as of the hearing date, we find that there was a reasonable factual basis to support the trial court's determination that the State proved by clear and convincing evidence that there was no reasonable expectation of reformation by EA in light of her continuous unwillingness to cooperate with the State and obtain substance abuse treatment, drug screening, and counseling during periods of non-incarceration. The evidence convinces this court that the mother's attempts to reform have not been genuine nor long lasting. The future does not hold promise that she will substantially modify her established pattern of behavior once released from incarceration. Therefore, the second prong of LSA-Ch. C. art. 1015(5)(b) was also satisfied.

Reunification
The record amply demonstrates that the State implemented a plan and made every effort to reunite the mother with the children. The caseworkers actively sought *114 to encourage and assist her in obtaining substance abuse treatment, drug screening, and counseling. They also scheduled regular visitation for the mother to bond with her children while the children were in foster care; and they referred her for psychological evaluation. Since September of 1992, the State continued to work with the mother in hopes of reuniting her with the children. At six-month intervals, the State reported the mother's progress to the court and recommended continued placement of the children allowing her time to reform and establish a stable home for the children. During the majority of this period, the mother continued to use drugs; failed to successfully complete recommended treatment programs; and failed to keep many of the scheduled visits with the children.
The record provides a reasonable factual basis to support the trial court's determination that the State proved by clear and convincing evidence that reasonable efforts to reunite the mother with her children were made by the State and that this determination was not clearly wrong.

Best Interests of the Children
The four older children have been in foster care since September of 1992, at which time they were approximately the following ages: 9 years, 3 years, 2 years and 9 months. They were placed in three different foster homes. The children have bonded to their foster parents, who have been able to provide for their needs and the special needs of some of these children. Additionally, they have been accepted as part of the family by their foster parents, who are interested and willing to adopt the children.
EA has consistently refused to seek drug abuse treatment or counseling despite court order. Furthermore, EA has not demonstrated her ability to provide or care for the children nor demonstrated her ability to provide for the special needs of her children. At the time of the hearing, she was incarcerated and such incarceration was supposed to last another three to four months.
In addition to protecting the mother's parental rights, the courts of this state are required to protect the children's rights to thrive and survive. State in Interest of JL, 93-352 at 9, 636 So.2d at 1192. The mother's past performance, her continued inability and refusal to take advantage of the services offered by the State, and her poor prognosis for future performance show that it is much more probable than not that EA cannot properly care for her four young children. See State, in the Interest of JH v. RFH, 572 So.2d at 633. Given the record, we find that there was a reasonable factual basis to support the trial court's determination that the State proved by clear and convincing evidence that the termination of parental rights was in the best interests of the children. LSA-Ch. C. art. 1015(5)(c); State in the Interest of S.C. v. D.N.C., 26,104 at 7, 639 So.2d at 430.

Conclusion
Under the circumstances of this case and based on the credibility determinations of the trial court, this court finds that there was a reasonable factual basis to support the trial court's determination that the State proved by clear and convincing evidence that the conditions of LSA-Ch. C. art. 1015(5) were satisfied as to the four older children; therefore, EA's parental rights were legally terminated as to GA, CA, JA, and CA2. Based on our review, this court further finds that the record establishes that the factual determinations of the trial court were not manifestly erroneous as to these four children.[9]
Regarding the termination of EA's parental rights as to the youngest child, RA, this court finds that the trial court was clearly wrong in finding compliance with the one-year period of elapsed time requirements of *115 LSA-Ch. C. art. 1015(4)(a), (5)(a), and (7)(a). Therefore, the termination of EA's parental rights as to RA constituted reversible error.

Decree
Accordingly, for the reasons stated, we affirm that portion of the trial court's judgment terminating EA's parental rights regarding GA, CA, JA, and CA2; and we reverse that portion of the judgment terminating EA's parental rights as to RA. However, in accordance with LSA-Ch. C. art. 1039(3), custody of RA (who has previously been adjudicated as a child in need of care) is maintained with the State, and this court reinstates the proceeding involving RA pursuant to Title VI of the Louisiana Children's Code, LSA-Ch. C. arts. 601 et seq., for continuation of that proceeding in accordance with applicable law.
AFFIRMED IN PART AND REVERSED IN PART.
REDMANN, J. Pro Tem., concurs and assigns reasons.
REDMANN, Judge Pro Tem., concurring.
One might theorize that C.C.P. art. 1154 (automatic amendment to conform pleadings to evidence), applicable because of Ch. C. art. 104, amended this petition at trial August 25, 1994, at which time over a year had passed since the youngest child was adjudicated in need of care. Apart from internal difficulties, however, that theory might allow a parent to be cited before the required year, and it is therefore unacceptable. The real problem in this case (and in others) is delay, at several steps and for several reasons, and that is not the fault of the one year requirement before so precious a right as parenthood can be extinguished.
NOTES
[1] Judge William V. Redmann, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The children, mother and grandmother are referred to by their initials to preserve their anonymity in this confidential proceeding.
[3] The dates of birth for these four children are:

GAMay 13, 1983, CAJanuary 17, 1990, JADecember 1, 1990, and CA2December 6, 1991.
[4] Approximately in October, 1993, GA and CA's natural father and JA's natural father executed voluntary acts of surrender for adoption. CA2's natural father died prior to these proceedings, and RA's father's whereabouts were unknown, but an attorney was appointed to represent his interest.
[5] Regarding LSA-Ch. C. art. 1015(2) and (3), the State's burden of proof is beyond a reasonable doubt. LSA-Ch. C. art. 1035.
[6] We note the distinction between the LSA-Ch. C. art. 1015(5)(a) requirement of removal from the parental home pursuant to a "court order" as opposed to the LSA-Ch. C. art. 1015(4)(a) requirement of an "adjudication" for purposes of calculating the one-year period of elapsed time.
[7] The grounds enumerated in article 1015 establish the elements of the cause of action for involuntary termination. If the grounds set forth in the "petition" do not meet all of the conditions of any one of the subsections, then the petition is subject to dismissal for failure to state a cause of action. In essence, the State's amended petition as to RA did not meet the condition that one year elapse from the date of removal of the child by court order and the filing of the petition. Therefore, the State's amended petition as to RA failed to state a cause of action, and pursuant to LSA-C.C.P. art. 927, we would have had the authority to notice this peremptory exception on our own motion.
[8] EA's mother, QA, left her job as a school teacher due to a disability related to a thyroid problem. She also has high blood pressure and is a borderline diabetic, all for which she is taking medication. Additionally, as noted earlier, QA was incarcerated in a federal penal facility in September of 1992 at a time when she had civil custody of the four older children.
[9] We note that this ruling may ultimately mean the permanent separation of these siblings from each other, a result which greatly concerns us. Under the facts and circumstances presented here, however, we have no other alternative. That effect must be left to the State to remedy, if possible. We express our hope that state authorities will attempt to place these children so as to allow them continued access and contact with each other as often as possible according to the children's and each respective child's best interests. State, in the Interest of Four Minor Children v. DW, 585 So.2d 1222, 1229 (La.App. 2nd Cir. 1991).