J^PETTIGREW, J.
In this case, the parents of EC and AC appeal the trial court’s judgment whereby both EC and AC would remain in the custody of the State of Louisiana with the long-term goal of freeing the children for adoption. For the following reasons, we affirm in part and reverse in part.
FACTS AND PROCEDURAL HISTORY
DC and BC are the natural parents of AC, a male bom on September 16, 1988; EC, a male born on March 26, 1990; and BC2, a female born on June 8,1992.
On or about July 20, 1993, the State of Louisiana, through the Office of Community Services (“State”), received information regarding an allegation of physical abuse of AC by his father, BC. The State conducted an investigation into the allegations and determined that the finding of abuse by BC was valid. On March 21, 1994, a petition was filed by the State requesting that the court adjudicate the children “to be in need of care and/or in need of supervision.” At the answer hearing on April 5, 1994, DC and BC waived their rights to an attorney and stipulated that the children were in need of care. After hearing evidence presented by the State, the trial court adjudicated the children in need of care and, on the recommendation of the State, placed the children in the physical and legal custody of their mother, DC, with BC having supervised visitation every other Saturday from 10 a.m. until 6 p.m. The State’s goal at that time was reunification of the family.
On June 20, 1994, the court granted temporary custody of the minor children to the State, finding that the previous order regarding the father’s visitation with the children had been violated. According to the State, BC had moved into the home where DC and the minor children were residing. The State filed a Motion to Modify Disposition, and on July 27, 1994, the court continued custody of the children with the State, noting that the children would remain in foster care.
The record in this case shows that there were numerous review hearings relative to these children between the July 27, 1994 hearing and the October 20, 1998 review hearing that forms the basis for this appeal. According to the record, the State’s original Ugoal of reunification of the family remained constant through June 19, 1996. After prolonged attempts to reunify the family failed, the State’s goal of reunification was eventually changed to a goal of long-term foster care for both EC and *320 AC.[1]
On October 5 and 9, 1998, the State sent case review reports to counsel for the parents regarding EC and AC, respectively. With regard to EC, he was to remain in the custody of the State. However, the State recommended that his case goal plan be changed from long-term foster care to adoption. With regard to AC, he was to remain in the custody of the State with the recommendation that his case goal plan continue to be long-term foster care.
At the beginning of the review hearing on October 20, 1998, all of the parties entered into a stipulation that AC’s case goal plan was long-term foster care. The only other issue concerning AC was the limitation of visitation with his parents. The State recommended that visitation be reduced from once a month to once every six weeks. The court heard evidence from two case workers for the State and a Court Appointed Special Advocate (“CASA worker”) regarding the placement of EC as well as the visitation issue concerning AC. The CASA worker recommended to the court that both EC and AC be freed for adoption.
After hearing all of the evidence, the court determined that visitation between AC and his parents should be reduced as recommended by the State. The court also found that the case plan was “not appropriate in whole or in part.” The court noted that it was “inappropriate where it’s recommended that one child be placed in long-term foster care and other child’s parental rights be terminated.” The court concluded “that the appropriate case plan would be to consider the termination of both children’s [parental] rights.” The court asked the State to revise the case plan as recommended by the CASA worker. The court recognized that whether this case would ultimately result in | germination of parental rights would depend on the evidence presented at the termination hearing. The court concluded:
Well, anyway, that’s the ruling of the court. The court considers the evidence that is produced here and comes to the decision it comes to. The department is responsible for revision of the case plan, not the court, whatever that makes, based on the footnote that’s provided for in Article 700. But if I find that it’s inappropriate in whole or in part, it looks like I am doing some revision of the plan, but how you implement it, I guess, would be the department’s problem.
Consider this matter reviewed for the time being. We will have another review hearing in six months.
A judgment reflecting that the goal for both EC and AC should be changed to adoption was signed by the trial court on October 20, 1998. The parents filed a motion for a new trial on October 30, 1998, that was summarily denied by the trial court.
The parents now appeal the trial court’s judgment of October 20, 1998, assigning the following specifications of error:
1) The trial court erred in entering an order allowing the Office of Community Services ... to amend the goal of [EC] to adoption, even though there was no showing that [DC and BC] were within the purview of the statute allowing termination of parental rights.
2) The trial court erred in amending, ex proprio motu, the goal of [AC], to adoption, from long term foster care.
3) The trial court erred in amending, ex proprio motu, the goal of [AC], to adoption, from long term foster care without any advance notice whatsoever to the parents of [AC].
DISCUSSION
As noted in the preamble of the Louisiana Children’s Code, “[t]he people of Louisiana recognize the family as the most *321 fundamental unit of human society; that preserving families is essential to a free society; that the relationship between parent and child is preeminent in establishing and maintaining the well-being of the child;” and “that extraordinary procedures established by law are meant to be used only when required by necessity and then with due respect for the rights of the parents, the children, and the institution of the family.” La. Ch.C. art. 101. Thus, it follows that the State of Louisiana, Isthrough the Office of Community Services, should be vigilant to insure that the rules and bureaucracy of the department do not contribute or cause the actual disruption and breakup of the family unit resulting in the termination of parental rights.
We recognize that the termination of parental rights is a severe and irreversible action, and that the legislature has imposed strict procedural and eviden-tiary requirements that must be met before the issuance of a judgment terminating parental rights. State in the Interest of GA, CA, JA, CA2 and RA, 94-2227, p. 5 (La.App. 1 Cir. 7/27/95), 664 So.2d 106, 110; See also La. Ch.C. arts. 1015 et seq. Accordingly, the termination of parental rights should be very cautiously and reluctantly used only when the fact circumstances justify such action.
In their first assignment of error, DC and BC argue that before the State can make a change in the case goal plan from long-term foster care to adoption, it must first show that the legal requirements for a termination proceeding have been met. Both counsel for the State and the children assert that this is “nonsense,” and that the State should not have to prove a case for termination before the filing of a petition and a trial. We agree with counsel for the State and the children.
Because there has been no termination of parental rights in this case, it is premature to discuss at length the legal principles concerning same. What we have before us is a situation where the parties were in court for a simultaneous case review and dispositional review as provided for by La. Ch.C. art. 711. According to the provisions of the Louisiana Children’s Code, case review hearings and disposi-tional review hearings are utilized by the courts to assess the progress in a case and to review the appropriateness of the State’s plans for a child who has been placed in its custody. See La. Ch.C. arts. 687 et seq.; La. Ch.C. arts. 701 et seq. These hearings continue until “the child achieves permanent placement.” La. Ch.C. arts. 687 and 701. Permanent placement is defined as either return of the child to his/her parents, placement of the child under guardianship of the person, or placement of the child with adoptive parents. La. Ch.C. art. 603(15). Therefore, it is clear that adoption is one of the options available to the State with respect to placement of a child in its custody.
| f;Prior to the review hearing on October 20, 1998, the State provided the parents with a case review report pursuant to La. Ch.C. arts. 689 and 690. As previously indicated, the State recommended that EC’s case goal plan be changed from long-term foster care to adoption. At this stage in the proceedings, however, this decision by the State was merely a goal, subject to review and revision.
The trial court clearly stated in its reasons for judgment that whether this case would result in termination would depend upon the evidence presented at the termination hearing. Should the State decide to pursue termination of parental rights under the facts and circumstances of this case, it would have the burden of proving its case by clear and convincing evidence. La. Ch.C. art. 1035. But, unless and until a petition for termination of parental rights is filed pursuant to La. Ch.C. arts. 1017 et seq., and the matter proceeds to trial, the State is not required to prove that the legal requirements for a termination proceeding have been met. Hence, this assignment of error is without merit.
*322 The final two assignments of error address the court’s unilateral decision to change the case goal plan for AC from long-term foster care to adoption. DC and BC argue that they should have been notified in advance of any change in AC’s case goal plan. Both counsel for the State and the children concur with the parents in this respect. We agree that based on the facts and circumstances of this particular case, the trial court exceeded its authority in changing AC’s case goal plan.
Case review reports must be filed ten days prior to a case review hearing. La. Ch.C. art. 688. Parties may file with the court a written response to the case review report provided that it is submitted to counsel of record and any unrepresented party at least five days prior to the review hearing. La.' Ch.C. art. 691. The comment to this article indicates that it is intended to provide the court and the parties with notice of potential issues relevant to the case plan. As correctly noted by counsel for the children in this case, without advance notice concerning the change in AC’s case goal plan, all parties were denied the opportunity to exercise them rights under La. Ch.C. art. 696, including among others, the right to testify, the right to confront and cross-examine witnesses, and the right to present evidence and witnesses.
17FoIlowing a case review hearing, the trial court has two options. The court can either (1) approve the plan and order compliance by all parties; or (2) determine that the case plan is not appropriate, in whole or in part, based on the evidence presented at the hearing and order the department to revise the case plan accordingly. La. Ch .C. art. 700. The comment to Article 700 specifically indicates that the court is not authorized to revise the case plan because the State remains responsible for revision of the plan.
A review of the instant record reveals that the ease review report regarding AC filed prior to the October 20, 1998 review hearing indicated that the State recommended that AC’s case goal plan continue to be long-term foster care. This was the last notice regarding AC’s case goal plan that DC and BC received prior to the review hearing at issue. Furthermore, at the beginning of the hearing, all of the parties stipulated that AC’s case goal plan was long-term foster care. The only issue before the court regarding AC was that of visitation. The State wanted to reduce AC’s visits with his parents from once a month to once every six weeks. The parties agreed that the testimony regarding AC would be limited to the issue of visitation.
After hearing the evidence regarding both AC and EC, the trial court determined that the case plan was not appropriate. The court noted that it would be more appropriate to consider “termination of both children’s parental rights as opposed to a hybrid situation.” The court then ordered the State to revise the case plan accordingly.
While this action by the trial court would be considered proper under different circumstances, i.e., a case review hearing wherein there had been no stipulation regarding the case plan, it was not proper in this case. The issue of AC’s case plan was not before the court. The parties had stipulated to the case plan and had no notice that it would be changed at the case review hearing. The court was only to consider modification of AC’s visitation with his parents. Thus, the court erred in changing AC’s case plan from long-term foster care to adoption.
IsDECREE
For the foregoing reasons, the trial court’s decision is affirmed as to EC and reversed as to AC. Costs in the amount of $116.00 are to be assessed equally against the State and the parents of the minor children.
AFFIRMED IN PART; REVERSED IN PART.

. We note that the minor child, BC2, drowned on August 20, 1995, while in the custody of foster parents. Thus, this appeal only concerns EC and AC.