STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CJ 1383

STATE OF LOUISIANA
IN THE INTEREST OF C.J.

*Judgment Rendered:* FEB 2 1 2020

********

Appealed from
The Juvenile Court
In and for the Parish of East Baton Rouge
Case No. JU12303

The Honorable Adam J. Haney, Judge Presiding

********

| | |
|---|---|
| Hillar C. Moore, III<br>District Attorney<br>Baton Rouge, Louisiana | Counsel for Appellee<br>State of Louisiana |
| Laura "Lucy" Locker-Melancon<br>Baton Rouge, Louisiana | Counsel for Appellee<br>Department of Children and<br>Family Services |
| Lakita Miller Leonard<br>Baton Rouge, Louisiana | Counsel for Appellee<br>C.J., Child |
| Rebecca E. May-Ricks<br>Caitlin M.A. Chugg<br>Baton Rouge, Louisiana | Counsel for Appellant<br>J.J., Mother |

********

BEFORE: HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

**LANIER, J.**

Appellant, J.J., seeks review of the trial court's judgment terminating her parental rights as to her minor child, C.J. J.J. argues on appeal that the State of Louisiana, Department of Children and Family Services ("State") failed to prove by clear and convincing evidence that there were grounds for termination and that termination was in the child's best interest. For the reasons that follow, we affirm.

According to the record, J.J., who was 14 years old at the time, and her 6-month old son, C.J., originally entered the State's custody in August 2016 based upon the State's concerns with J.J.'s "diminished cognitive, emotional and behavior protective capacities." J.J. and C.J. were continued in State custody, both being adjudicated children in need of care. The State subsequently filed a petition for termination of parental rights and certification for adoption on December 6, 2018, seeking to terminate the rights of J.J. and the rights of the unknown father of C.J. and to certify C.J. as free and eligible for adoption.

The State sought termination based on La. Ch. Code art. 1015(5) and (6), noting, in part, as follows:

> 5.
> As to the mother, [**J.J.**], it is respectfully submitted that her parental rights be terminated under:
>
> La. Ch. C. Art. 1015(5), and in support thereof alleges the following to wit:[1]
>
> a)    [J.J.] has failed to provide her child with the basic necessities of life, including but not limited to, a stable home.
>
> b)    [J.J.] has failed to make significant contributions to the child's care and support for at least six consecutive months.
>
> La. Ch. C. Art. 1015(6), and in support thereof alleges the following to wit:
>
> The Department of Children and Family Services developed case plans in an attempt to provide services to the mother. [J.J.] has

---

[1] At the conclusion of the termination of parental rights hearing, the trial court dismissed the allegations pursuant to Article 1015(5) as grounds for termination.

failed to substantially comply with the case plans sufficient to further the goal of reunification. In addition to ongoing disruptive behaviors and disrupted placements, there is no reasonable expectation of significant improvement in the parents' condition or conduct in the near future considering the child's age and need for a safe, stable, and permanent home.

The matter proceeded to a hearing, at which time the trial court heard testimony from various witnesses, including J.J. After considering the testimony and evidence in the record, the trial court found that J.J. had failed to substantially comply with the case plans put forth by the State and that there was no reasonable expectation of significant improvement in the near future. Thus, the trial court concluded that it was in the child's best interest to terminate J.J.'s parental rights pursuant to Article 1015(6), to terminate the parental rights of any unknown fathers of C.J., and to certify C.J. free and available for adoption. The trial court signed a judgment on August 30, 2019, in accordance with these findings. This appeal by J.J. followed.

On appeal, J.J. argues that the trial court erred in terminating her parental rights because the State failed to meet its burden of proof by establishing grounds for termination by clear and convincing evidence and because there was no evidence that termination was in the best interest of the child. J.J. argues that the evidence and testimony in this case demonstrates the State failed to provide her with ample assistance to remedy the barriers to reunification and that, absent "affirmative efforts of the State, termination is not possible under Article 1015(6)." J.J. further asserts that she is "well on her way to establishing the type of bond [C.J.] needs for reunification, and putting in the hard work" necessary.

A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. **Stobart v. State, Through Department of Transportation and Development,** 617 So.2d 880, 882 (La. 1993); **State, In Interest of GA,** 94-2227 (La. App. 1 Cir.

3

7/27/95), 664 So.2d 106, 110. An appellate court reviews a trial court's findings as to whether parental rights should be terminated according to the manifest error standard. **State ex rel. K.G.**, 2002-2886 (La. 3/18/03), 841 So.2d 759, 762. The Louisiana Supreme Court has expressed the unique concerns present in all cases of involuntary termination of parental rights as follows:

> In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great deference and vigilant protection under the law, and due process requires that a fundamentally fair procedure be followed when the state seeks to terminate the parent-child legal relationship. However, the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent.

> The State's *parens patriae* power allows intervention in the parent-child relationship only under serious circumstances, such as where the State seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. As such, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven. Nonetheless, courts must proceed with care and caution as the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens. The potential loss to the parent is grievous, perhaps more so than the loss of personal freedom caused by incarceration.

> Title X of the Children's Code governs the involuntary termination of parental rights. [Article] 1015 provides the statutory grounds by which a court may involuntarily terminate the rights and privileges of parents. The State need establish only one ground ... but the judge must also find that the termination is in the best interest of the child. Additionally, the State must prove the elements of one of

4

the enumerated grounds by clear and convincing evidence to sever the parental bond.

**State ex rel. J.A.**, 99-2905 (La. 1/12/00), 752 So.2d 806, 810-811 (citations omitted).

A well-settled principle is that the "fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents." **State ex rel. SNW v. Mitchell**, 2001-2128 (La. 11/28/01), 800 So.2d 809, 814 (quoting **Santosky v. Kramer**, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-1395, 71 L.Ed.2d 599, 606 (1982)). A corollary principle is that in an involuntarily termination of parental rights proceeding, a court must delicately balance the natural parent's fundamental right and the child's right to a permanent home. **Mitchell**, 800 So.2d at 814-815.

In terminating J.J.'s parental rights in the instant case, the trial court offered extensive reasons for judgment. The trial court acknowledged that this is "an extremely difficult and heartbreaking case," as both J.J. and C.J. are children who have been in the State's care for three years and who are "victims of their unfortunate circumstances."

The trial court noted that the State made reasonable efforts to place J.J. and C.J. together and that these placements continued until August 2017, when the State received a validated complaint of abuse involving J.J. slapping C.J. in the face. The trial court further stated, "[t]he two were [then] placed in separate placements, and on September 28, 2017, CJ was placed with the foster family that he is still with. That placement was made at the suggestion of JJ, who felt that these foster parents were the best available caretakers for CJ." After reviewing several aspects of J.J.'s case plan and her non-compliance with same, the trial court made the following conclusions:

This Court has no doubt that JJ loves and cares for CJ. It is apparent in all of the Court's interactions with JJ and observations of mother and child. This case, however, is not about how much JJ loves CJ. This case is about whether CJ carried his burden in this case.[2] The Court finds that he has. The court does not have a reasonable expectation of significant improvement in the near future. This is not a conclusion that the Court comes to lightly, but it is the proper conclusion under the Children's Code.

The law also requires the Court to determine whether this termination is in the best interest of the child, regardless of what may have been proven. In this case, CJ has been in a stable foster home for over two years. It is a home that was specifically chosen by JJ because she felt like this was the best place for CJ. Given the amount of time that he has been in foster care, the likelihood that JJ will be able to resume custody in the near future, and the apparently [sic] quality of his present placement, the Court also finds that it is in his best interest that the termination be granted.

For the above reasons, the Court does terminate the parental rights of JJ, as well as any known [or] unknown fathers of CJ, and does hereby certify CJ to be free and available for permanent adoption into an appropriate home.

We have thoroughly reviewed the record in this matter and the history leading up to the State's petition for termination of J.J.'s parental rights. The record clearly and convincingly demonstrates that it was in the best interest of C.J. that J.J.'s parental rights be terminated and that C.J. be cleared for adoption. The trial court's conclusion is supported by the evidence and, therefore, not manifestly erroneous.

---

[2] At the outset, we acknowledge that as an appellate court, we review judgments and not reasons for judgment. **Walton v. State Farm Mutual Automobile Insurance Company**, 2018-1510 (La. App. 1 Cir. 5/31/19), 277 So. 3d 1193, 1199. Indeed, judgments are often upheld on appeal for reasons different than those assigned by a trial court. **Wooley v. Lucksinger**, 2009-0571 (La. 4/1/11), 61 So. 3d 507, 572. Nonetheless, we note that the trial court's reasons for judgment refer to the burden in this case as being the child's burden. Rather, as set forth in La. Ch. C. art. 1035, when seeking to involuntarily terminate parental rights, the State has the burden of proving one of the statutory grounds for termination set forth in La. Ch. C. art. 1015 by clear and convincing evidence. **State in Interest of A.L.D.**, 2018-1271 (La. 1/30/19), 263 So.3d 860, 863; La. Ch. C. art. 1035(A).

For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs associated with this appeal are assessed against appellant, J.J. We issue this memorandum opinion in accordance with Uniform Rules–Courts of Appeal, Rule 2–16.1(B).

**AFFIRMED.**