787 So.2d 526 (2001)
STATE of Louisiana in the Interest of I.D.H., Plaintiff-Appellant,
v.
Snapper THOMAS, Defendant-Appellee.
No. 34,962-JAC.
Court of Appeal of Louisiana, Second Circuit.
May 9, 2001.
*527 Department of Social Services by Audie L. Jones, Counsel for Appellant, Department of Social Services, State of Louisiana.
Lunn, Irion, Salley, Carlisle & Gardner by Walter S. Salley, Shreveport, Counsel for Appellee, Snapper Thomas.
Michelle Dufour Brown, Counsel for Child, I.D.H.
Before WILLIAMS, STEWART & PEATROSS, JJ.
PEATROSS, J.
The Department of Social Services ("DSS") appeals the trial court's refusal to terminate the parental rights of S.T., the father of the minor child, I.D.H. For the reasons stated herein, we affirm.

*528 FACTS

In January 1995, I.D.H., then only a few months old, was brought into the custody of DSS after being the victim of Shaken Baby Syndrome, allegedly at the hand of his mother. I.D.H. suffered tremendous injuries as a result of the abuse, including severe brain damage and broken limbs. I.D.H. was released from Louisiana State University Medical Center to his temporary foster mother, Elaine Spivey. At the subsequent adjudication hearing in March 1995, Ms. Spivey testified that the doctors told her to give I.D.H a lot of love and affection because he only had a couple of months to live.
I.D.H. was adjudicated in need of care and DSS designed a case plan, including visitation schedules, with the goal of reunification with S.T. From March 1995 to August 1998, S.T. followed, for the most part, the visitation schedule and attended most of the periodic case plan review hearings. From August 1998 to February 2000, S.T. did not, however, have any significant contact with I.D.H. S.T. did not provide any support, clothing or presents for I.D.H. during this time. Despite encouragement to make contact with the child, S.T. failed to do so and from May 1999 to January 2000, DSS was unaware of his whereabouts. S.T. also quit attending the review hearings. In May 1999, S.T. was arrested and incarcerated for a drug offense.
On February 25, 2000, DSS filed a petition to terminate parental rights. On March 16, 2000, the mother consented to termination of her rights, but S.T. denied the petition and the matter was tried on several dates in October and November 2000.
On December 8, 2000, the trial court rendered its decision refusing to terminate S.T.' s parental rights. The effect of the ruling was to allow I.D.H. to remain in the custody of the State and in the foster care of Ms. Spivey, rather than being freed for adoption. The State appeals.

DISCUSSION
In a termination of parental rights case, the state must prove all the elements of its case by clear and convincing evidence. La. Ch. C. art. 1035; State in Interest of L.L.Z. v. M.Y.S., 620 So.2d 1309 (La.1993); State in the Interest of D.T. v. K.T., 29,796 (La.App.2d Cir.6/18/97), 697 So.2d 665.
It is well-settled that an appellate court cannot set aside a juvenile court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. State in the Interest of D.T. v. K.T.; supra, State in the Interest of T.D. v. Webb, 28,471 (La.App.2d Cir.5/8/96), 674 So.2d 1077. The manifest error rule applies to factual determinations in termination of parental rights cases. State in the Interest of K.L.B. v. Biggs, 29,512 (La.App.2d Cir.2/28/97), 690 So.2d 965; State in the Interest of G.A., 94-2227 (La.App. 1st Cir.7/27/95), 664 So.2d 106, citing Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La.1976). Great weight is attached to the exercise of the trial judge's discretion, which will not be disturbed on review if reasonable men could differ as to the propriety of the trial court's action. Further, where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the trial court. In re A.J.F. Applying for Private Adoption, 00-0948 (La.6/30/00), 764 So.2d 47; Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); In re M.M. de St.G., wife of and PBS, Applying for Private Adoption of K.N.K., 97 655 (La.App. 5th Cir.11/25/97), 705 So.2d 220. Where the factfinder is presented with two permissible *529 views of the evidence, the factfinder's choice between them is not clearly wrong. Rosell, supra.
In manifest error review, it is important that the appellate court not substitute its opinion when it is the juvenile court that is in the unique position to see and hear the witnesses as they testify. The trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record. In re A.J.F. Applying for Private Adoption, supra; Adkins v. Huckabay, 99-3605 (La.2/25/00), 755 So.2d 206.
La. Ch. C. art. 1015 provides the grounds for the involuntary termination of parental rights. In the case sub judice, the parties disagree as to which subsection of that article governs the situation presented herein. Whether the state presented clear and convincing evidence to support termination of parental rights pursuant to La. Ch. C. art. 1015 is not, however, dispositive. The trial court's determination that an element of a statutory subsection for the termination of parental rights has been proven does not inherently satisfy the additional requirement that termination be in the best interest of the child. La. Ch. C. art. 1039; State in the Interest of M.L., 95-0045 (La.9/5/95), 660 So.2d 830; State in the Interest of D.T., supra; State in the Interest of D.G. v. Danny G., 30,196 (La.App.2d Cir.10/29/97), 702 So.2d 43. The state must prove the best interest of the child dictates termination of parental rights. State in the Interest of H.D., 98-0953 (La.App. 4th Cir.11/4/98), 721 So.2d 1045.
We find it unnecessary to address the statutory aspect of this case because we find no error in the trial court's factual finding that freeing I.D.H. for adoption was not in the child's best interest. The following excerpt from the trial court's ruling expresses the bases for its dismissal of the State's petition to terminate S.T.'s parental rights:
... the love and affection, Ms. Spivey has for [I.D.H.] was unmistakable. Her emotional testimony was riveting. The love and lifelong attachment she shares with this child, despite his varied and extreme behavior and medical problems, was awe-inspiring to this Court.
After full questioning by all counsel, this Court asked a series of questions, the most important of which was whether she was an adoptive resource for this child. Through tear filled eyes, she testified that no, she would not be. However, it is clear that because of the close bond and attachment to the child, and with the services to the child provided by the Department because of the child being in the Department's custody, she would keep the child for the duration of the child's life, however long that may be.
This Court does not understand how anyone could maintain that certifying this child for adoption could be in the child's best interest. This child's best interest dictates that the child remain in the loving care and control of Ms. Spivey, the only mother he has ever known.
* * *
... there is no person who, even with unlimited training, could take better care of this child than Ms. Spivey, his only foster parent.
... the emotional trauma that would result to the child if ever removed from the loving care and nurturing of Ms. Spivey would be devastating and irreparable. Only her premature death will disrupt this placement, and that risk exists regardless of the permanent plans that are available for children.
Ms. Spivey further testified that the infant was not responsive and lifeless when she took him home from the hospital; but, *530 after many long nights caring for him, he finally began to respond. In the care of Ms. Spivey, the child grew stronger and has achieved more than any of the doctors predicted.[1] I.D.H. was five years old at the time of the hearing and was walking, talking, interacting with Ms. Spivey and showing love and affection. He has emotional and behavioral problems for which he takes three different medications. I.D.H. has tremendous medical needs and several medical appointments each week, all of which Ms. Spivey has attended. He also attends a special needs kindergarten.
We also find very significant the trial court's conclusion that, "if Ms. Spivey was able and willing to provide an adoptive home, necessarily not requiring the Department's assistance for the medical and therapeutic needs of the child, then the result could well be different." The trial court expressed doubt as to the likelihood that a qualified adoptive family could be found for I.D.H., considering his special needs, and further concluded that, "when adoption is not a viable alternative, such as is clearly the situation in this case, it makes little, if any, sense to pursue certification for adoption by termination of parental rights." We agree. Based on this record, we can find no error in the conclusion that there would be no benefit to this child by terminating S.T.'s parental rights and certifying him for adoption. To the contrary, we agree with the trial court that I.D.H. would suffer considerable harm if removed from the care of Ms. Spivey and placed in a new and unfamiliar environment.
In addition, we note that the trial court recognized the possibility of future parental involvement and support from S.T. The record also supports the finding that S.T. cares for I.D.H. and desires to be involved in his life. Moreover, several family members of S.T. and I.D.H. have expressed the willingness to be a resource for the child.
It is apparent from the trial court's thoughtful ruling that it carefully observed and weighed the credibility of the witnesses in this case and arrived at what it believed to be the best solution for the continued stability and improvement of this child. We will not disturb the trial court's judgment.

CONCLUSION
For the foregoing reasons, the judgment of the trial court dismissing the State's petition to terminate the parental rights of S.T. is affirmed.
AFFIRMED.
NOTES
[1] I.D.H.'s prognosis was bleak. He was expected to have hearing and sight difficulties and was not expected to be able to walk or talk. After treatment for infant glaucoma, I.D.H.'s sight is normal. He can also hear within normal ranges. He can walk with braces on his legs and attends special kindergarten classes. Although he has severe developmental and emotional problems, he does display affection to Ms. Spivey and other emotions.