h STEWART, J.
The juvenile court rendered a judgment terminating the parental rights of the parents to the minor children, L.T., D.T., *1132 K.T., and E.T., and certifying the children as free for adoption. However, citing the best interest of the child, the juvenile court refused to terminate parental rights as to the minor child, S.T., even though the court concluded that the grounds for termination were proven by clear and convincing evidence. The mother, Latasha Thomas, appeals the termination of her parental rights as to L.T., D.T., K.T., and E.T. Willie Brookshire, the father of E.T., appeals the termination of his parental rights. Finally, the Department of Social Services (“DSS”) appeals the court’s decision regarding S.T. We reverse that portion of the trial court’s judgment which denied termination of parental rights as to S.T., affirm in all other respects, and remand for further proceedings.
FACTS
DSS received a report of neglect due to substance abuse concerning Latasha Thomas and her children. J.T. (born 02/24/91), S.T. (born 01/13/97), L.T. (born 09/24/98), and D.T. (born 01/10/2000) were placed into state custody by instanter order issued July 14, 2000, and subsequently adjudicated as children in need of care on October 6, 2000. Thomas, was unable to properly care for her children due to her use of crack cocaine and her unstable living situation. Thomas was also on supervised probation.
Following the removal of her children from her custody, Thomas entered Pines Treatment Center on August 23, 2000, to address her drug addiction; however, she only stayed two days and made insignificant 12progress. Thomas, who was on supervised probation, discontinued contact with her probation officer. A warrant was issued for her arrest in October 2000. In juvenile court proceedings, the children were continued in state custody and a case plan with the goal of family reunification was approved by the court in a judgment of disposition rendered October 26, 2000. In December 2000, Thomas had another relapse and was found with burn marks from a crack pipe on her lips and hands.
In accordance with the requirements of the court approved case plan, Thomas underwent a psychological evaluation in February 2001. She was found to be in need of intensive long-term mental health and substance abuse counseling. A psychiatric assessment was recommended to determine the need for medication to address anxiety and depression noted by the evaluation. The psychiatric evaluation took place in April 2001. That same month, Thomas also began therapy with Jodie McJunkins of Community Support Programs. This was just prior to giving birth to her fifth child, K.T., on May 5, 2001.[1] The record indicates that Thomas continued to use crack cocaine at times during this pregnancy and that drug use may have precipitated her going into labor. The record further indicates that she made little progress during her therapy with McJunkins which concluded in June 2001, when she stopped attending.
Following the birth of K.T., Thomas became a resident of Providence House and obtained employment. However, her stay at Providence House was terminated after only two months due to her argumentative and [¡¡threatening behavior. Linda Wells, a case worker at Providence House, testified that Thomas had confrontations with staff and residents, made threatening remarks, and violated the rules by coming into Providence House drinking. Thomas also attended substance abuse counseling at Northwest Regional Center for Addictive Disorders beginning in June 2001. She did not successfully complete the pro *1133 gram due to poor attendance because of employment. Thomas had a negative drug screen during this time.
The record indicates that Thomas had a relapse in January 2002 and overdosed on medication in April 2002. In January 2002, she began a new substance abuse counseling program with the Center for Families. Again, she had inconsistent attendance and was noncompliant with the counseling. She was transferred to a new counselor, but this move was also unsuccessful. The counselor described Thomas as a “very angry young lady” and believed that she needed more intensive counseling than what was being provided. Counseling terminated on May 9, 2002, when Thomas was arrested on the warrant for her probation violation. She remained in jail until September 5, 2002. At a permanency hearing on August 22, 2002, the case plan goal was changed to termination of parental rights and adoption. The record indicates that drug screens during the period of September 2002 to January 2003 were negative. Thomas gave birth to her sixth child, E.T., on April 4, 2002.[2] This child was placed for adoption and taken to the adoptive family in Utah soon after his birth. Thomas also underwent [ 4additional psychological and psychiatric assessments during 2002. The psychological assessment noted that she exhibited a combination of emotional and behavioral disturbances and that she was at risk to mistreat a child in her care. As a result of another psychiatric evaluation, she was placed on medication.
In January 2003, Thomas underwent a substance abuse evaluation with the Council on Alcoholism and Drug Abuse. Even though she had been having negative drug screens during the past few months, treatment was still recommended. Thomas also began counseling with a licensed clinical social worker, Shauna Gilbert, in January and attended nine sessions through July 2003, during the course of the termination proceedings. However, she missed many appointments. Gilbert noted moderate improvement in Thomas’s anger management and a decrease in her paranoia. Thomas also underwent an additional psychiatric assessment on January 15, 2003. The assessment revealed that she was taking addictive medications that she had obtained without informing the physician of her substance abuse disorder. She continued to exhibit anger and lack of insight into her problems. The psychiatrist, Dr. Paul Ware, concluded that Thomas was not mentally capable of parenting her children, and he did not believe that she would reach that level of functioning.
DSS filed the petition to terminate parental rights on April 9, 2003. DSS alleged lack of substantial parental compliance with the case plan and no reasonable expectation of significant improvement in Thomas’s condition in the near future as grounds for termination under La. Ch. C. art. | ¡4015(5). As grounds for terminating the parental rights of Willie Brookshire, the father of E.T., DSS alleged his failure to provide significant contributions to the child’s care and support and his failure to maintain significant contact for more than six months in accordance with La. Ch. C. art. 1015(4)(b) and (c).[3] The hearing took place over the course of four days on June *1134 16 and 30, 2003, and on July 14 and 15, 2003. Thomas did not attend the last two days of the hearing and was not present for the presentation of her case. Brook-shire was also absent for the last two days of the hearing and did not appear for the presentation of his case. Bench warrants were issued for both of them for their failure to appear. J.T., the oldest child, was dismissed from the proceeding by motion of DSS and agreement of the parties.
The juvenile court judge found that DSS proved by clear and convincing evidence the grounds for termination of parental rights and found termination to be in the best interest of the children L.T., D.T., K.T., and E.T. As to S.T., although the court found the grounds for termination established, the court did not find termination of parental rights to be in his best interest. However, the court did not articulate any reasons for this exceptional finding. Appeals by Thomas, DSS, and Brookshire followed.
| ^DISCUSSION

Appeal by Latasha Thomas

In a proceeding to terminate parental rights, the state as the petitioner must prove all the elements of its case by clear and convincing evidence. La. Ch.C. art. 1035; State in the Interest of T.D., T.D., & W.D. v. R.D. & L.D., 34,580 (La. App.2d Cir.3/2/01), 781 So.2d 871. The grounds for termination are set forth in La. Ch.C. art. 1015, in relevant part, as follows:
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order, there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
While the state need only establish one ground for termination, it must also establish that termination is in the child’s best interest. State in the Interest of I.D.H. v. Thomas, 34,962 (La.App.2d Cir.5/9/01), 787 So.2d 526.
La. Ch.C. art. 1036, which governs proof of parental misconduct, states in pertinent part:
C. Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
(1) The parent’s failure to attend court-approved scheduled visitations with the child.
(2) The parent’s failure to communicate with the child.
(3) The parent’s failure to keep the department apprised of the parent’s whereabouts and significant changes affecting the parent’s ability to comply with the case plan for services.
(4) The parent’s failure to contribute to the costs of the child’s foster care, if ordered to do so by the court when approving the case plan.
(5) The parent’s repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
|7(6) The parent’s lack of substantial improvement in redressing the problems preventing reunification.
(7) The persistence of conditions that led to removal or similar potentially harmful conditions.
*1135 D. Under Article 1015(5), lack of any reasonable expectation of improvement in the parent’s conduct in the near future may be evidenced by one or more of the following:
(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
[[Image here]]
(3) Any other condition or conduct that reasonably indicates that the parent is unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.
This issues of parental compliance with a case plan, the parent’s expected success of rehabilitation, and the expectation of significant improvement in the parent’s condition and conduct are questions of fact in a termination proceeding. State in the Interest of A.R.H. & A.A. H. v. Hines, 35,800 (La.App.2d Cir.2/27/02), 810 So.2d 1166. The manifest error standard of review applies to a trial court’s findings as to whether parental rights should be terminated. State of Louisiana, In the Interest of KG. & T.G., 2002-2886, 2002-2892 (La.3/18/03), 841 So.2d 759.
Thomas argues that termination of her parental rights was in error. She asserts that she has substantially complied with her case plan by remaining drug free since May 8, 2001, completing parenting and anger management classes, and attending counseling. She further argues that there is a reasonable expectation of significant improvement in her condition and conduct as evidenced by her cooperation with the state and lathe improvements she has shown. Finally, she argues that it is not in her young children’s best interest to permanently terminate her rights.
The case plan set forth specific goals for Thomas to meet and actions for her to take. The first goal required her to “acknowledge how her substance abuse has negatively impacted her family.” In meeting this goal, she was required to submit to substance abuse assessments, follow through with all treatment recommendations and random screening, demonstrate her ability to remain sober by clean urine screens for six months after completing treatment, and demonstrate changes in her behavior and lifestyle. The record indicates that Thomas has not met this goal or fulfilled the required actions. In her most recent substance abuse evaluation conducted by Rukiya Brown with the Council on Alcoholism and Substance Abuse on January 3, 2003, Thomas admitted to using drugs to excess in the past, but indicated that she does not consider herself an addict. This same attitude toward her condition was found by Dr. Ware, who conducted three separate psychiatric evaluations of Thomas and found her to be in denial about her problems. In his last report of January 2003, Dr. Ware noted concern that Thomas had obtained prescriptive medications without informing the physician of her substance abuse problem. While Thomas has had periods of negative drug screens, she has also had periods of relapse into drug use, even during her pregnancy with K.T. While she asserts that she has been drug free, information at trial indicated incidents of drug use in the early part of 2002, and Thomas has refused drug screens as recently as 1¡¡February and March of 2003. The record also indicated that Thomas has not successfully completed any substance abuse counseling program.
The second goal of the case plan required Thomas to maintain relationships *1136 with her children by visiting in accordance with the visitation agreement and providing safe care and supervision of the children during visits. Cynthia Wood, the foster care case manager for the children, testified that she was present for most of Thomas’s visits with the children. Wood stated that some visits were good, but that some could be “quite chaotic.” Wood testified that, at times, Thomas exhibited anger and hostility toward the case workers in front of the children. She described one visit in February 2003 which had to be cut short due to Thomas’s uncooperative attitude. Wood stated that Thomas failed to demonstrate control of her anger, appropriate parenting skills, and empathy for the feelings of her children. She also stated that Thomas canceled some visits.
As another goal, Thomas was to maintain stability and demonstrate her ability to properly care for herself and her children by maintaining a safe and stable home and enough income to support herself and her children; verifying her income and employment; arranging childcare for her children for when she is not with them; and demonstrating the child care techniques she learned. The case plan attached to the permanency hearing judgment of April 7, 2003, shows that her progress on these matters was “ongoing.” The record indicates that Thomas had difficulty securing a place to live, as shown by her short stay at Providence House, and was not clear as to her housing and employment situation at the time of trial. Cynthia Wood |intestified that while she generally knew of her whereabouts, Thomas did not provide much information on her living arrangements or employment situation. Wood did testify that Thomas’s home was neat and looked nice during visitations conducted from January 2003 through March 2003.
Another goal required Thomas to work cooperatively with DSS. In doing so, she was required to submit to psychological evaluation and follow the recommendations. She did submit to two psychological evaluations. However, no significant improvement was shown in her condition. She also attended parenting classes. An additional goal required Thomas to improve stress and anger management techniques by completing anger management class and demonstrating management of her anger by not being involved in fights. While she did attend anger management class, the record establishes that she was not very successful in controlling her anger, particularly in dealings with DSS case workers and some counselors. Her failure to control her anger also impeded her ability to successfully complete the Providence House program and benefit from counseling.
Finally, Thomas was required to resolve all legal issues by cooperating with her probation officer. She failed to meet this goal. Her probation officer, Leonard Pierce described her as “very uncooperative.” Her probation was revoked and she ended up serving about five months in jail until her case was terminated unsatisfactorily.
From our review of the record, we find no manifest error in the trial court’s determination that DSS proved the grounds for termination by clear and convincing evidence. DSS established that there was no substantial [ n compliance with the case plan and that there is no reasonable expectation of significant improvement in Thomas’s condition in the near future. As shown by the evidence, Thomas failed to complete many of the required goals of her case plan and, most importantly, the weight of the evidence indicates that there is no reasonable expectation of significant improvement in the near future. Thomas *1137 has not taken responsibility for her own behavior which led to removal of her children and has not acknowledged the seriousness of her substance abuse problem and other emotional and mental health issues. Her lack of understanding and concern for her children was demonstrated by her use of drugs during her pregnancy with K.T. and her failure to appear at the hearing for the final two days. Finally, we agree with the trial judge that termination of parental rights is in the best interest of the younger children, L.T., D.T., K.T., and E.T., none of whom were shown to have substantial bonds with their mother. Termination will allow these children the opportunity to establish secure, stable, long-term, and continuous relationships in a family home environment through adoption. For these reasons, we affirm the termination of Thomas’s parental rights as to L.T., D.T., K.T., and E.T.

Appeal by DSS

DSS appeals the trial judge’s determination that termination of parental rights would not be in the best interest of S.T. even though the grounds for termination were proven by clear and convincing evidence. DSS asserts that S.T.’s father has not been identified and that no one has l12come forward to claim paternity. DSS also asserts that the evidence shows termination of Thomas’s parental rights to be in S.T.’s best interest.
Where the grounds for termination are proved, then ordinarily termination will be in the best interest of the child. However, even after proof of grounds for termination under La. Ch.C. art. 1015, the court may, in an exceptional case, refuse to terminate based on a best interest determination. State in the Interest of S.D. v. Moore, 31,192 (La.App.2d Cir.8/19/98), 717 So.2d 265; State in the Interest of D.G. v. Danny G., 30,196 (La.App.2d Cir.10/29/97), 702 So.2d 43.
The trial judge found the grounds for termination established, and we have affirmed this finding. The trial judge then found that termination would not be in S.T.’s best interest but refused to articulate any reason for this finding. Having thoroughly reviewed the record, we find no basis for the trial judge’s best interest determination.
The record establishes that sometime after his removal from Thomas’s custody, S.T. spent about a year living with his elderly great-grandmother, Delores Johnson. Johnson, according to Cynthia Wood’s testimony, was ambivalent about whether she wanted raise any of the children and had problems coping with the behavior of the children, S.T. and J.T., who were in her care. Sometime in April 2003, S.T. was placed in a foster home and began receiving counseling for his behavioral problems. S.T.’s counselor, Shelly Booker, a psychiatric social worker and expert in child social work, testified at trial. Booker began working with S.T. in June 2003, and had met with him three times as of the time of her testimony. She l13noted that S.T., who was six years old, had been through a lot of conflict and had witnessed his mother’s drug use, anger, and violent aggression toward others. Booker described S.T.’s relationship with his mother as difficult and chaotic. Booker noted that S.T. loves his mother, but that he also expresses some fear about her. Booker found S.T. to be capable of participating in counseling and to be in need of treatment for a least a year-or longer to address-his behavioral and emotional problems. Booker expressed the belief that through intensive counseling, S.T. would become stable and be a good candidate for adoption. In the meantime, she believed that his foster care placement should remain stable as the foster mother had indicated a desire to work with S.T. to address his problems.
*1138 Booker believed termination of parental rights to be appropriate for S.T. and in his best interest. According to Booker, S.T. is at a point where he can go in one of two directions. He is in need of the type of stable, consistent environment that he has not been provided by his mother. While Booker admitted that S.T. would experience some sadness as a result of the termination, she believed that he could bond with a stable, functional, loving and nurturing family.
Roberta Moses, the CASA volunteer working on the case, testified about S.T.’s closeness with his mother and the fact that he did not want to leave her when visitations ended. Moses also noted that S.T. was having difficulty adjusting to his foster home. In a report dated May 27, 2003 and submitted into evidence, Moses noted her belief that S.T. would adjust to | 14his foster placement and that he would adjust and thrive if parental rights were terminated.
The evidence establishes that S.T. does have a bond with his mother, but that the relationship has not been beneficial to his well-being. His counselor found no basis for continuing the parent-child relationship and related through her testimony why termination would clearly be in S.T.’s best interest. We note that termination of parental rights does not have to result in a complete severing of familial ties. While a child remains in the custody of DSS following termination, La. Ch.C. art. 1037.1 allows the court to order continuing contact between the child and his parent, sibling, or other biological relative where such contact is determined to be in the child’s best interest. In the event of adoption, some continuing familial contact may also be allowed by the court in accordance with the provisions of La. Ch.C. art. 1269.1.
For these reasons, we find manifest error in the trial judge’s best interest determination regarding S.T. As shown by the record, DSS established termination to be in S.T.’s best interest by clear and convincing evidence. The trial court failed to articulate any exceptional circumstance as a basis for its finding that termination was not in S.T.’s best interest, and the record reveals no such exceptional circumstance. We hereby reverse that part of the judgment denying termination as to S.T., and we hereby order termination of the parental rights of Latasha Thomas and any unknown father to the minor child, S.T.
h ^Appeal by Willie Brookshire
Brookshire appeals the termination of his parental rights as to the minor child, E.T. As grounds for termination, DSS alleged that Brookshire, for a period of more than six consecutive months, failed to provide significant contributions to E.T.’s care and support and failed to maintain significant contact with E.T. by visiting or communication. See La. Ch. C. art. 1015(4)(b) and (c). Brookshire argues that DSS failed to prove these grounds by clear and convincing evidence as there was no direct testimony of his failure to support or communicate with E.T. He also points out that he did not know he was E.T.’s father until sometime after May 15, 2003, when the DNA tests were complete.
The record establishes that E.T. was born on April 4, 2002. Prior to the birth, Brookshire signed for a certified letter on March 2, 2002, which notified him of his possible paternity and the imminent birth of the child. This letter was from an attorney preparing for the adoption of E.T. There is no indication in the record of any action taken by Brookshire in response to the information in the letter. After his birth, E.T. was taken to Utah to be with his adoptive family and has remained there since that time. When Brookshire was finally located by DSS on March 10, 2003, he submitted to a paternity test which verified him as E.T.’s father. *1139 At trial, Cynthia Wood’s testimony established the lack of any indication of support or contact attempted, offered, or provided by Brookshire to E.T. since his birth. Brookshire did not register with the putative father registry, did nothing to indicate paternal care and concern at the time of E.T.’s birth., and took no |1fisteps to investigate the whereabouts of his child after his birth. Although Brookshire objected to termination of his parental rights, he was not present for the final two days of the hearing and was not present for the presentation of his case.
On this record we find no error in the trial court’s termination of Brookshire’s parental rights. Brookshire has had no contact with E.T. since his birth and has provided no support for the child. The grounds for termination were established by clear and convincing evidence and termination was clearly shown to be in E.T’s best interest.
CONCLUSION
For the reasons mentioned, we affirm the judgment terminating the parental rights of Latasha Thomas to the minor children L.T., D.T., K.T., and E.T., and we affirm the judgment terminating the parental rights of Willie Brookshire to the minor child E.T. We reverse the .judgment as it pertains to S.T., and we hereby order termination of the parental rights of Latasha Thomas and any unknown father to the minor child S.T., and remand for further proceedings. In accordance with La. Ch.C. art. 406(A), costs are not assessed.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. K.T. was placed in state custody on May 9, 2002, and adjudicated in need of care.

. E.T. was placed in state custody on August 23, 2002, and adjudicated in need of care.

, DSS was unable to identify the fathers of S.T., L.T., and K.T. Lonzie Harris was identified as the father of J.T., and he admitted to the termination. Bryan Gates was identified as the father of D.T. Gates' parental rights were terminated, and he has not appealed. Willie Brookshire was identified as the father of E.T. His rights were terminated, and he has appealed.