STEWART, J.
_JjT.P., the biological father of S.P.W., a female child, appeals a judgment terminating his parental rights. The trial court found that T.P. abandoned S.P.W. by failing to make significant contributions to her care and support for a period of six consecutive months as of the time the petition for termination was filed, and that termination of parental rights was in the child’s best interest. For the reasons explained in this opinion, we affirm.
FACTS
The Louisiana Department of Children and Family Services (“the department”) removed S.P.W., then age three, and her four older siblings from the custody of their mother, H.A., on December 4, 2007, pursuant to an oral instanter order. Removal was necessitated by validated reports of physical abuse of one of the children by the mother’s husband and dependency due to the mother’s drug use. The family had a prior history with the department. The children had previously been placed in the state’s custody by instanter order issued December 1, 2006, because of validated reports of neglect due to drug dependency and abuse. They were returned to the mother’s custody in October 2007. As stated above, less than two months later, the depart *970 ment again removed the children from H.A.’s custody. On December 19, 2007, S.P.W. was placed in foster care with her paternal grandmother, I.P., in Wisconsin where T.P., who has never had custody of the child, also resides.
|2The children were adjudicated in need of care on January 8, 2008. Though case plans were formulated to work toward family reunification, the permanent goal for the children was changed to adoption as reflected in the permanency hearing judgment of May 6, 2008.
The department filed a petition to terminate parental rights on April 23, 2009. Though a date was set, the hearing never took place. The department again filed a petition to terminate parental rights on October 18, 2010. The petition alleged that T.P.’s parental rights should be terminated under La. Ch. C. Art. 1015(4) for abandonment in that he failed to keep the department apprised of his whereabouts, failed to provide significant contributions toward S.P.W.’s care, and failed to maintain significant contact with her. At an answer hearing held on November 19, 2010, T.P., through the attorney appointed to represent the absent fathers, denied the allegations of the termination petition.
The termination hearing took place on January 12, 2011. T.P. was not present for the hearing. Testimony was taken and the entire record, including case plans, was introduced into evidence. Only evidence relating to T.P. will be addressed.
According to Anita Traxler and Tracy Hoggatt, both with the department, T.P. attended one Family Team Conference in May 2007, when S.P.W. and her siblings were in state custody for the first time. When the children were removed from their mother’s custody again in December 2007, the department notified T.P. As documented in the case plan from the Family Team Conference on June 23, 2008, the department | ^representative who brought S.P.W. to her grandmother in Wisconsin on December 19, 2007, visited T.P. and discussed the child’s permanency plans with him. Around that time, T.P. was incarcerated for a parole violation and was soon to be released.
Hoggatt, who supervised the foster care, testified that the department had minimal contact with T.P. Though it attempted to notify him of all hearings and Family Team Conferences, several items mailed to him were returned unclaimed. Hoggatt recalled that the department did contact T.P. in May 2009, at which time he supported adoption of S.P.W. by his mother. T.P.’s case plan allowed him to visit S.P.W. in the home of his mother and under her supervision. Hoggatt testified and the case plans indicate that T.P. had requested and obtained a home study for possible placement of S.P.W. in his home but that the home was not approved.
Hoggatt’s testimony established the T.P. attended by telephone the last Family Team Conference on December 6, 2010, shortly before the termination hearing. She informed the court that arrangements were made through a social worker at a detention center where T.P. was located to have him available for the conference. Hoggatt testified that this was the only conference attended by T.P. since the children had been taken into custody on December 4, 2007, and that he had not attended any of the hearings concerning S.P.W.
T.P.’s case plans beginning with the December 22, 2008, Family Team Conference required him to provide financial assistance to his mother for S.P.W. Hoggatt testified that the department had nothing showing that Rhe ever provided financial support for S.P.W. No support payments were documented to have been paid by *971 T.P. through Support Enforcement Services, and he provided no proof to the department that he provided financial support, gifts, or other items for S.P.W. On cross-examination by T.P.’s counsel, Hog-gatt admitted that other than checking for payments through Support Enforcement Services, she would not know whether T.P. provided any sort of financial support for S.P.W. unless he reported it.
The department introduced a “Stipulation & Judgment of Paternity” from a matter brought by the State of Wisconsin in 2006 on behalf of Louisiana and H.A. against T.P. to establish paternity and child support. The judgment filed in Wisconsin on April 19, 2006, and in Louisiana on May 5, 2006, determined T.P. to be S.P.W.’s father and stated that the issue of child support was to be held open due to T.P.’s incarceration. It ordered him to report to the Brown County Child Support Agency within seven days of his release from incarceration. Hoggatt testified that any support payments collected by Wisconsin should have come to Louisiana, but there was no evidence that Louisiana had received support payments.
Finally, Hoggatt testified that its Wisconsin counterpart makes monthly visits to check on S.P.W. and provides quarterly reports to the department. Based on these reports, the department had no concerns about recommending S.P.W. for adoption by her paternal grandmother, who had become a certified foster/adoptive parent.
On February 3, 2011, the trial court rendered a judgment terminating T.P.’s parental rights. The judgment also terminated the rights of the | smother, H.A., as to each of the children, and those of the other biological fathers. In its written reasons for its judgment, the trial court found that the department did not prove the grounds for abandonment by T.P. under either La. Ch. C. art. 1015(4)(a) or (c). It found that the department learned of T.P.’s whereabouts within four months of the hearing date as evidenced by the fact that he participated by telephone in the last Family Team Conference held on December 6, 2010. The trial also found that the evidence showed that T.P. periodically exercised supervised visitation with S.P.W. in his mother’s home. However, the trial court did find that the department proved, under La. Ch. C. art. 1015(4)(b), that T.P. abandoned S.P.W. by failing to provide significant contributions to her care and support. Furthermore, the trial court found termination of T.P.’s parental rights to be in S.P.W.’s best interest so that she can be free for adoption.
T.P.’s appeal followed. In two assignments of error, he argues that the department failed to prove by clear and convincing evidence that he did not provide significant contributions to S.P.W.’s care and support or that termination of parental rights was in the child’s best interest.
DISCUSSION
The best interest of the child is the primary concern of the courts and the state in proceedings for the termination of parental rights. State ex rel. A.T., 06-0501 (La.7/6/06), 936 So.2d 79. To terminate parental rights, the state must meet the onerous burden of proving one of the statutory grounds for termination set forth in La. Ch. C. art. 1015 by clear and convincing evidence. La. Ch. C. art. 1035(A); State ex rel. B.H. v. A.H., 42,864 (La. |App.2d6 Cir.10/24/07), 968 So.2d 881. Proof by clear and convincing evidence requires a showing that the existence of the disputed fact is highly probable, meaning more probable than its nonexistence. State in Interest of K.D., 586 So.2d 692 (La.App. 2d Cir.1991). Once a ground for *972 termination is established, the trial court judge may terminate parental rights if termination is in the best interest of the child. La. Ch. C. art. 1037(B); State ex rel. B.H. v. A.H., supra.
In a termination proceeding, the appellate court will not set aside the trial court’s findings of fact in the absence of manifest error. State ex rel. B.H. v. A.H., supra; State in the Interest of M.H., R.H., Jr., and K.H. v. K.W.H., 40,332 (La.App.2d Cir.9/23/05), 912 So.2d 88.
The trial court found that the department proved the ground for termination under La. Ch. C. art. 1015(4)(b), which states:
(4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
[[Image here]]
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child’s care and support for any period of six consecutive months.
T.P. argues that the department did not produce affirmative evidence that he failed to provide support. He asserts that the evidence merely established that the caseworker had no knowledge of any support provided by him. He points out that his case plan required him to provide financial support to his mother for S.P.W.’s care and that it did not require him to provide this support through the department. He also argues that visitation |7with his child should be considered a “significant non-financial contribution” to her care and support, because the visits allow the grandmother some time to rest. We find no merit to these arguments.
In the 2006 proceedmg brought by Wisconsin on behalf of Louisiana and H.A., T.P. stipulated to paternity. Because he was incarcerated, the issue of child support was held open, and he was ordered to report to the Brown County Child Support Agency within seven days of his release. The stipulation and judgment entered in Wisconsin placed the burden on T.P. to go to the child support enforcement agency in Wisconsin after his release to have the issue of child support determined. Although the record shows that T.P. was incarcerated when S.P.W. was placed in the custody of the state in December 2007 and again at the time of the last Family Team Conference in December 2010, the record also indicates that there were times during this period when he was not incarcerated and could have provided support for this child. Hoggatt testified that support payments on behalf of S.P.W. would have been sent from Wisconsin’s support enforcement agency to Louisiana and would have been reflected on the database maintained by Support Enforcement Services in Louisiana. The department could find no evidence that T.P. ever had his child support obligation determined or paid support for S.P.W. while she has been in foster care.
T.P. correctly points out that his case plan ordered him to provide financial assistance to his mother, not the department, for S.P.W.’s care. However, the parent must demonstrate to the department that he is complying with his case plan. Hog-gatt’s testimony established that the 1 ^department had not received any information showing that T.P. had provided financial assistance to his mother for S.P.W.’s care as required by his case plan. None of the case plan reviews indicate that T.P. provided support or assistance on S.P.W.’s behalf.
*973 In State ex rel. B.H. v. A.H., supra, this court concluded that even though the parent did not make significant contributions in support of his child in foster care, the trial court erred in ruling that the state had met its burden of proving the parent’s failure to provide financial support where the case plan did not call for or specify any parental contribution. Here, the case plan did require T.P. to provide financial assistance, but there is no evidence that he did so.
In State ex rel. J.T., 38,149 (La.App.2d Cir.12/17/08), 862 So.2d 1130, the father appealed the termination of his parental rights by arguing that the state provided no direct testimony of his failure to support the child. The appellate court rejected this argument upon finding that the ground for termination was established by clear and convincing evidence through the foster care case manager’s testimony that there was no indication of support provided by the father. Here, Ms. Hoggatt’s testimony established that the department received no indication that T.P. provided assistance that would constitute a significant contribution to S.P.W.’s care and support.
Hoggatt’s testimony and the absence of any record of financial contributions or other support provided by T.P. establishes by clear and convincing evidence that he failed to provide significant contributions to |9S.P.W.’s care and support for the requisite six month period under La. Ch. C. art. 1015(4)(b).
Additionally, T.P. argues that the department presented no up-to-date information to establish that termination is in S.P.W.’s best interest. He notes that no one from the department has visited her since she was placed in Wisconsin in December 2007, and that it has no firsthand knowledge about her life there. We find no merit to these arguments.
Hoggatt testified that the department’s counterpart in Wisconsin visited the foster home monthly and provided quarterly reports. Based on these reports, the department planned to recommend the paternal grandmother for adoption of S.P.W. upon termination. The record shows that T.P. had requested a home study and that the study had not approved his home for placement. The reasons for the denial were not admitted into evidence. The record also shows that T.P. had recognized that he was not in a position to take care of his daughter and that he had indicated that he wanted his mother to adopt her. Sometime prior to the termination hearing, apparently while he was again incarcerated or in a detention center for drug use, he repudiated that position and decided to challenge termination of his parental rights. However, the record establishes that T.P. has had minimal contact with S.P.W. over the years and that he has not provided support for her.
As recognized by the trial court, T.P.’s lack of contact with and support of the child while she was in Louisiana, his lack of support while she’s been in foster care in Wisconsin, and his incarcerations indicate a lack 110of stability and provide sufficient reasons to find that he has forfeited his parental responsibilities. Forcing S.P.W. to remain in foster care while her father rotates in and out of jail would deprive her of permanency and stability. Thus, as did the trial court, we find termination of parental rights to be in the child’s best interest.
CONCLUSION
For the reasons stated, we affirm the trial court’s judgment terminating the parental rights of T.P. as to S.P.W. No costs are assessed.
AFFIRMED.