STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CJ 0296

STATE OF LOUISIANA

IN THE INTEREST OF M.T.

Judgment Rendered: September 27, 2019

********

Appealed from the
17th Judicial District Court
In and for the Parish of Lafourche
Case No. J-12842

The Honorable Christopher J. Boudreaux, Judge Presiding
********

| | |
|---|---|
| Rebecca N. Robichaux<br>Raceland, Louisiana | Counsel for Appellant<br>K.D., Mother |
| Linda A. Mitchell<br>Houma, Louisiana | Counsel for Appellee<br>Department of Children and<br>Family Services |
| Marcia Arceneaux<br>Houma, Louisiana | Counsel for Appellee<br>M.T., Child |
| Kristine Russell<br>District Attorney<br>Thibodaux, Louisiana | Counsel for Appellee<br>State of Louisiana |
| Andrea Stentz<br>Thibodaux, Louisiana | Counsel for Appellee<br>D.T., Father |

********

BEFORE: HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

LANIER, J.

Appellant, K.D., seeks review of the trial court's judgment terminating her parental rights as to her minor child, M.T. K.D. argues on appeal that the State of Louisiana, Department of Children and Family Services ("State") failed to prove by clear and convincing evidence that there were grounds for termination and that termination was in the child's best interest. For the reasons that follow, we affirm.

According to the record, M.T., born July 31, 2014, originally entered the State's custody by Verbal Instanter Removal Order on April 6, 2017, for neglect/failure to thrive/lack of supervision. M.T. was subsequently adjudicated a child in need of care on August 2, 2017, and was continued in the State's custody. The State's case plan goal as presented at the adjudication hearing, *i.e.*, reunification with a concurrent goal of adoption, was not accepted by the trial court. Rather, the trial court ordered the case plan goal be changed to adoption. A permanency hearing was held on April 3, 2018, at which time the trial court noted that K.D. had not completed her case plan and that adoption was in the best interest of M.T.

The State filed a petition for termination of parental rights on June 20, 2018, seeking to terminate the rights of K.D. and M.T.'s father, D.T. The State sought termination based on La. Ch. Code art. 1015(4), (5), and (6), noting, in part, as follows:

6.
The misconduct of the parents toward this child constituted extreme abuse, cruel and inhuman treatment or grossly negligent behavior below a reasonable standard of human decency inasmuch as it was starvation and life threatening to this child.

7.
The child, [M.T.], was abandoned by her parents, [K.D.] and [D.T.], by placing her in the physical custody of a nonparent, or the department, or by otherwise leaving her under circumstances demonstrating an intention to permanently avoid parental responsibility by:

1. As of the filing of this petition, the mother has failed to provide significant financial contributions to the child's care and support for a period in excess of six consecutive months:

 a. the mother did not provide any financial contributions toward the cost of her child's stay in foster care between April 2017 and February 2018; and

 b. the mother was required to pay $25 per month and has failed to do so, only making two payments in March 2018, totally $100.

2. As of the filing of this petition, the mother has failed to maintain significant contact with her child for a period in excess of six consecutive months:

 a. the mother did not visit with her [child] between 05/30/2017 and 12/01/2017; and

 b. the mother did not communicate with her child through any other means during this time frame.

The matter proceeded to a hearing on October 4-5, 2018, at which time the trial court heard testimony from various witnesses, including K.D. and D.T. After considering the testimony and evidence in the record, the trial court found that the State had proven, by clear and convincing evidence, that K.D. failed to provide financial contribution to M.T. for a period of six (6) consecutive months pursuant to Article 1015(5)(b) and that K.D. failed to maintain significant contact with M.T. for a period of six (6) consecutive months pursuant to Article 1015(5)(c). Thus, the trial court concluded that it was in the child's best interest to terminate K.D.'s parental rights pursuant to Article 1015(4), (5), and (6). The trial court signed a judgment on November 20, 2018, terminating the parental rights of both K.D. and D.T.[1] This appeal by K.D. followed.

On appeal, K.D. argues that the trial court erred in terminating her parental rights because the State failed to meet its burden of proof by establishing grounds for termination by clear and convincing evidence and because there was no evidence that termination was in the best interest of the child. K.D. argues that the evidence demonstrates that she has "substantially complied" with the State's case

---

[1] We note that D.T. has not appealed the judgment below. Thus, the judgment is final as it relates to the termination of his parental rights to M.T.

plan and that "there is reasonable expectation of significant improvement." She maintains that this court should "err on the side of reunification in that [she] has proven she deserves to be reunited with her child."

A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. **Stobart v. State, Through Department of Transportation and Development**, 617 So.2d 880, 882 (La. 1993); **State, In Interest of GA**, 94-2227 (La. App. 1 Cir. 7/27/95), 664 So.2d 106, 110. An appellate court reviews a trial court's findings as to whether parental rights should be terminated according to the manifest error standard. **State ex rel. K.G.**, 2002-2886 (La. 3/18/03), 841 So.2d 759, 762. The Louisiana Supreme Court has expressed the unique concerns present in all cases of involuntary termination of parental rights as follows:

> In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great deference and vigilant protection under the law, and due process requires that a fundamentally fair procedure be followed when the state seeks to terminate the parent-child legal relationship. However, the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent.

> The State's *parens patriae* power allows intervention in the parent-child relationship only under serious circumstances, such as where the State seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. As such, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if

4

justifiable grounds exist and are proven. Nonetheless, courts must proceed with care and caution as the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens. The potential loss to the parent is grievous, perhaps more so than the loss of personal freedom caused by incarceration.

Title X of the Children's Code governs the involuntary termination of parental rights. [Article] 1015 provides the statutory grounds by which a court may involuntarily terminate the rights and privileges of parents. The State need establish only one ground ... but the judge must also find that the termination is in the best interest of the child. Additionally, the State must prove the elements of one of the enumerated grounds by clear and convincing evidence to sever the parental bond.

**State ex rel. J.A.**, 99-2905 (La. 1/12/00), 752 So.2d 806, 810-811 (citations omitted).

A well-settled principle is that the "fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents." **State ex rel. SNW v. Mitchell**, 2001-2128 (La. 11/28/01), 800 So.2d 809, 814 (quoting **Santosky v. Kramer**, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-1395, 71 L.Ed.2d 599, 606 (1982)). A corollary principle is that in an involuntarily termination of parental rights proceeding, a court must delicately balance the natural parent's fundamental right and the child's right to a permanent home. **Mitchell**, 800 So.2d at 814-815.

In terminating K.D.'s parental rights in the instant case, the trial court offered extensive reasons for judgment. The trial court discussed the balancing act required in termination cases, noting that the interests of the parents are weighed against and alongside those of the child. The trial court stated:

In the instant matter [K.D.], admitted that she did not provide financial support or had any direct contact with the minor child for a period of six (6) months. While she testified that she attempted to reestablish contact in late November 2017 and actually had the first visit on December 1, 2017 it should be noted with great emphasis that the Children's Code envisions [significant] contact. A single meeting beyond the six (6) month time frame does not indicate [significant] contact to this Court.

It should further be noted that this Court, having sat as the Drug Court for Lafourche Parish, is aware of the fact that [K.D.] attended Drug Court from approximately 2005 until 2007 when her probation was terminated and she was sentenced to the Department of Corrections. [K.D.] has had a difficult time throughout the course of her life in attempting to extricate herself from her drug dependency. It is this Court's opinion that the reasons the Children's Code sets forth the six (6) month time frame on both contact and support is because a young child is a perishable commodity. By which the Court means that the youth of a child only last for a brief period, never again to be repeated. This Court finds the drafters of the code clearly recognized that issue, understanding that a young child cannot [simply] be placed on a shelf to be released when the parents have at some point resolved their issues and again want to take on their duties of a parent. The Court does not doubt that [K.D.] has great love for her child but her actions to this point have clearly indicated that she has placed her own needs and wants before that of the child. It is for [these] reasons the Court feels it has no other alternative but to issue a judgment terminating her rights as the mother of the child.

We have thoroughly reviewed the record in this matter and the history leading up to the State's petition for termination of K.D.'s parental rights. The record clearly and convincingly demonstrates that it was in the best interest of M.T. that K.D.'s parental rights be terminated and that M.T. be cleared for adoption. The trial court's conclusion is supported by the evidence and, therefore, not manifestly erroneous.

For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs associated with this appeal are assessed against appellant, K.D. We issue this memorandum opinion in accordance with Uniform Rules–Courts of Appeal, Rule 2–16.1(B).

**AFFIRMED.**

6