STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 CJ 1298

STATE OF LOUISIANA IN THE INTEREST OF

A.D. (DOB: 9/8/05)
G.D. (DOB: 4/8/08)
L.S. (DOB: 5/13/10)
K.G. (DOB: 7/20/16)

Judgment Rendered: JUN 0 4 2021

* * * * *

On Appeal from the
23rd Judicial District Court
In and for the Parish of Assumption
State of Louisiana
Trial Court No. J-4373

Honorable Emile St. Pierre, Judge Presiding

* * * * *

| | |
|---|---|
| Laura Locker-Melancon<br>Baton Rouge, LA | Attorney for Plaintiff-Appellee,<br>Department of Children and Family<br>Services |
| Josephine C. Vanderhorst<br>New Orleans, LA | Attorneys for Appellees,<br>A.D. and G.D. |
| Jessica Cantave<br>Harvey, LA | |
| Hester R. Hilliard<br>Metairie, LA | Attorney for Appellee,<br>B.D. |
| Adam J. Verret<br>Peirre Part, LA | Attorney for Defendant-Appellant,<br>F.D. |

* * * * *

BEFORE: THERIOT, WOLFE, AND HESTER, JJ.

**HESTER, J.**

F.D., the mother of A.D, G.D., and B.D., appeals the judgment of the trial court terminating her parental rights and releasing the children for adoption. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

F.D. is the mother of seven children. In this proceeding, her parental rights were terminated under La. Ch. C. art. 1015(6) as to three of her children: A.D. born September 8, 2005; G.D. born April 8, 2008; and B.D. born December 7, 2017. Unfortunately, F.D. has admittedly struggled with drug addiction, which has resulted in legal and financial problems. A.D. and G.D. were initially adjudicated children in need of care and came into the custody of the Department of Children and Family Services ("DCFS") in March 2015, when it was reported to DCFS that F.D. had been manufacturing and abusing crystal meth in her home, and that F.D. had a history of substance abuse and drug related criminal history. At that time, F.D. was incarcerated, and the children were left without a legal caregiver. In March 2016, A.D. and G.D. returned to F.D.'s custody, and their brother K.G. was born June 20, 2016. Shortly thereafter, F.D. was again incarcerated and A.D., G.D., and K.G. were left with F.D.'s mother. While they were living with F.D.'s mother, there were allegations of abuse by a friend, and the children returned to the custody of DCFS in December 2016. The children returned to F.D.'s custody in April 2017 under the supervision of DCFS. During the in-home visits while the children were with F.D., the CASA volunteer noted that there was no electricity in the home, F.D. was noncompliant with drug tests, and she was arrested in July 2017 for theft. Shortly thereafter, B.D. was born.

In January 2018, after F.D. had a positive drug test, A.D. and G.D. for the third time, and K.G. for the second time were ordered by the trial court to return to the custody of DCFS. B.D. was also placed in a foster home on February 12, 2018.

2

Originally, the goal was reunification with a concurrent goal of adoption, and DCFS adopted a case plan for F.D. The goal was subsequently changed to adoption. On September 19, 2018, F.D. tested positive for amphetamines and methamphetamines.

On April 8, 2019, DCFS filed a petition for the termination of F.D.'s parental rights to A.D., G.D., K.G., and B.D., contending that F.D. had not provided any financial contributions to the children's care, had not complied with her case plan, had been inconsistent in complying with drug tests, and tested positive for drugs in November 2018 and February 2019. After a hearing, the trial court signed a judgment on August 7, 2019, denying the petition to terminate the parental rights of F.D. but keeping the children in custody of DCFS to "afford [F.D.] the opportunity to demonstrate continued compliance with her case plan."

On February 4, 2020, DCFS filed a second petition for termination of F.D.'s parental rights to A.D., G.D., K.G., and B.D. In the petition, DCFS contended that F.D. had not substantially complied with her case plan, had a positive drug screen on December 11, 2019, had made no significant contribution towards the care of her children, and had been inconsistent in disclosing her work schedule and availability for home visits. After the petition was filed, F.D. voluntarily surrendered her parental rights to K.G. DCFS's second petition for termination of F.D.'s parental rights came before the trial court for a hearing on July 8, 2020. After the hearing, on August 5, 2020, the trial court signed a judgment terminating the parental rights of F.D. to A.D., G.D., and B.D. pursuant to La. Ch. C. art. 1037. The judgment further ordered that A.D., G.D., and B.D. were certified free and eligible for adoption.

In the judgment the trial court made the following findings: (1) DCFS proved by clear and convincing evidence that the parental rights of F.D. should be terminated; (2) at least one year has elapsed since the children were placed in DCFS custody and there has been no substantial compliance with the court-approved case

plan; (3) there is no reasonable expectation of significant improvement in F.D.'s condition or conduct; and (4) it is in the best interest of the children for the parental rights of F.D. to be terminated and for them to be freed for adoption. It is from this judgment that F.D. appeals.

## LAW AND ANALYSIS

It is well settled that a trial court's findings on factually-intense termination of parental rights issues are reviewed on appeal under a manifest error standard of review. **State ex rel. H.A.B.**, 2010-1111 (La. 10/19/10), 49 So.3d 345, 368. A reviewing court must accord great deference to the factual findings of the trial court and cannot set aside those findings of fact in the absence of manifest error or unless those findings are clearly wrong. **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). This well settled principle of review is based not only on the trial court's better capacity to evaluate witnesses and detect variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said, but also on the proper allocation of trial and appellate functions between the respective courts. **Rosell**, 549 So.2d at 844.

In any case regarding the involuntary termination of parental rights, the courts must balance the often competing interests of the natural parent and the child. **State ex rel. SNW v. Mitchell**, 2001-2128 (La. 11/28/01), 800 So.2d 809, 814-15. Parents have a natural, fundamental liberty interest in the continuing companionship, care, custody, and management of their children that warrants great deference and protection under the law. **State ex rel. K.G.**, 2002-2886 (La. 3/18/03), 841 So.2d 759, 762. However, the child has an interest in terminating parental rights that prevent adoption and inhibit establishing stable, long-term family relationships. In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent. **K.G.**, 841 So.2d at 762.

4

Title X of the Children's Code governs the involuntary termination of parental rights and the certification of children for adoption. As stated within La. Ch. C. art. 1001, the purpose of involuntary termination proceedings is "to protect children whose parents are unwilling or unable to provide safety and care adequate to meet their physical, emotional, and mental health needs, by providing a judicial process for the termination of all parental rights and responsibilities and for the certification of the child for adoption." Recognizing that the termination of parental rights is a severe and permanent action, the Louisiana Legislature imposed strict procedural and evidentiary requirements to be met before a judgment of termination can be rendered. **State, in Interest of GA**, 94-2227 (La. App. 1st Cir. 7/27/95), 664 So.2d 106, 110. The termination procedure requires DCFS to prove the elements of at least one of the statutory grounds for termination of parental rights, set forth in La. Ch. C. art. 1015, by clear and convincing evidence. See La. Ch. C. art. 1035; **K.G.**, 841 So.2d at 762-63. Once DCFS meets its evidentiary burden, the trial court must also determine that termination of the parental rights is in the best interest of the child. **K.G.**, 841 So.2d at 762-63; see La. Ch. C. art. 1037.

In this case, DCFS alleged grounds for termination of F.D.'s parental rights under La. Ch. C. art. 1015(6), which provides in pertinent part as follows:

> Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

Louisiana Children's Code art. 1036C pertinently provides:

> Under Article 1015(6), lack of parental compliance with a case plan may be evidenced by one or more of the following:
> (1) The parent's failure to attend court-approved scheduled visitations with the child.
> (2) The parent's failure to communicate with the child.

(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.

(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.

(8)(a) The parent's failure to provide a negative test result for all synthetic or other controlled dangerous substances, except for any drug for which the parent has lawfully received a prescription, at the completion of a reasonable case plan.

As noted, DCFS need only establish one of the enumerated grounds for termination. DCFS argued that it established by clear and convincing evidence the lack of compliance under La. Ch. C. art. 1015(6), specifically La. Ch. Code art. 1036 C(3), (4), (6), and (7).

Ms. Danielle Carter, the DCFS case manager since January 2018, testified during the hearing. Ms. Carter began her testimony by acknowledging that F.D. completed her parenting classes, mental health assessment, and substance abuse program. She also described F.D.'s relationship with A.D. and G.D. as "very good" and said F.D. had adequate housing for the children. However, she testified that she had difficulty communicating with F.D. and struggled to complete in home visits and random drug tests. She stated that in December 2019, she received a call about F.D. failing a drug test. Ms. Carter expressed concern about F.D.'s ability to maintain, "staying clean." Ms. Carter said that throughout her history with the case, F.D. has not always been truthful. Ms. Carter testified that DCFS never received any parental contributions from F.D., but that F.D. had on occasion purchased gifts for the children. During cross-examination, Ms. Carter acknowledged that after F.D.'s positive drug test in December 2019, F.D. was able to produce other negative tests around the same time.

According to Ms. Carter, A.D. was doing very well with her foster parents and expressed to her as well as F.D. that she wanted to be adopted. Ms. Carter stated that B.D. was challenging during the visits with F.D. because B.D. always wanted her foster mom around. She testified that B.D. has been with her foster parents since February 2018, and is "very attached to them." Ms. Carter stated that DCFS's recommendation was that the children remain in care with the goal of adoption. In so recommending, she noted that this was the third time A.D. and G.D. were involved with DCFS and the uncertainty of the future was affecting the children.

Ms. Jill Johnson, a CASA supervisor, was assigned to this case in September 2015. She testified that B.D. is very attached to her foster mom. She also testified about how much growth and academic improvement she has seen in A.D. and G.D. compared to when they were living with F.D. She acknowledged the work that F.D. put in during 2020, but ultimately stated that she thought adoption was in the children's best interest.

F.D. testified at the hearing. She said she loves her children and has a strong bond with A.D. and G.D. She testified that she has had little chance to bond with B.D., but she felt with time they could develop a relationship. F.D. openly acknowledged that her drug addiction caused her to "mess up as a parent in the past," but testified that the last time she used any illicit substance was in November 2018. She introduced into evidence two negative drug tests taken after the positive test in December 2019. She testified that she has complied with her case plan other than paying her financial contribution, which she acknowledged she did not do. However, she stated that her financial situation has been "rough," and she has contributed to her children by buying them shoes, birthday presents, and other gifts. F.D. stated that she currently lives in a home with her mother and two of her children, and has two jobs.

As part of this proceeding, the trial court also reviewed the entire record, which included several letters from DCFS to the trial court and confidential reports and recommendations from CASA regarding F.D. and her compliance with her case plan. The reports and letters revealed F.D.'s struggles with addiction, legal problems, inability to maintain employment, periods of time without electricity, and inconsistency in communicating with her case manager. The CASA reports documented how these difficulties prevented F.D. from providing a stable home life for the children. Further, the reports noted the struggles A.D. and G.D. were having in school with academics and behavior while in F.D.'s custody. This evidence revealed that prior attempts to allow the children to return to the custody of F.D. were unsuccessful.

In its reasons for judgment, the trial court acknowledged that these types of ruling are the most difficult for the court. The trial court stated, "[i]n a nutshell, these children have had a rough life thus far due to the mother's addiction and resultant legal problems. The legal system has worked with the mother fastidiously over the years in hopes that she will 'get it together.' The mother's efforts over the years-spotty at best-cause the Court to conclude that the mother cannot prevail herein."

There is no dispute that F.D. loves her children, and since the first petition to terminate her parental rights was filed, she has complied with parts of her case plan. However, after considering the evidence and the deference due to the trial court's decision, especially involving the sensitive issue of termination of parental rights, we cannot say that the trial court was manifestly erroneous in its determination that DCFS proved elements of at least one the statutory grounds for termination of parental rights set forth in La. Ch. C. art. 1015, by clear and convincing evidence. F.D. does not dispute that she did not pay her parental contribution, she also had positive drug tests in February 2019 and December 2019, just five months after the

8

July 2019 hearing, and DCFS had difficulty communicating with F.D. and completing their home visits and drug tests. See La. Ch. C. art. 1036C(3), (4), (6), and (7).

Furthermore, as stated above, the children have an interest in terminating parental rights that preclude or delay adoption and inhibit establishing stable, long-term family relationships. The courts of this state have consistently found the interest of the children to be paramount over that of the parent. F.D. was candid about her drug addiction and the effect it has had on her ability to parent. At this point, A.D. and G.D. have been in custody of DCFS three times and most recently since February 2018. They have had multiple placements. B.D. has been in the custody of DCFS since she was a newborn and has been in the same home. Prior attempts to return the children to F.D.'s custody have been unsuccessful. These children are in desperate need of stability, and Ms. Carter and Ms. Johnson both testified that the children are doing quite well in their current placement and both recommended adoption. Accordingly, we find no error in the trial court's determination that the termination of F.D.'s parental rights is in the children's best interest. Considering the unique position of the trial court in this matter to personally observe the parties and witnesses while assessing the evidence and making its decision, and the trial court's reasoned and supported factual basis for granting DCFS's petition to terminate F.D.'s parental rights, we affirm the judgment of the trial court.[1]

## CONCLUSION

Accordingly, after thoroughly and carefully reviewing the record before us and applying the applicable law, we affirm the judgment of the trial court terminating

---

[1] F.D. also contended that the trial court erred in denying her motion for new trial. F.D. argued in her motion that the judgment was clearly contrary to the law and evidence. As we have determined herein that the judgment was not contrary to the law and evidence, we find no merit to her argument that the trial court erred in denying her motion for new trial.

9

the parental rights of F.D. to A.D., G.D., and B.D. All costs of the appeal are assessed to appellant, F.D.

**AFFIRMED.**